### GILBERT v. SEATCO MFG. CO. et al.

(Circuit Court, D. Washington, W. D. December 11, 1899.)

1. **CORPORATIONS—CONTRACTS.**
    Two persons contracted for the purchase of all the stock of a lumber corporation. They made a partial payment thereon, and the stock was retained by the sellers as collateral security for the deferred payments; the purchasers taking possession of the property. Subsequently the purchasers borrowed from plaintiff money with which to make payments on such stock; giving their individual notes for a portion, and for the remainder a note purporting to be that of the corporation, signed by them as its officers, although they had not been elected such officers, nor had they at the time become owners of the stock. Plaintiff had knowledge of the purpose for which the sums were borrowed. *Held*, that the obligations for the sums so borrowed did not constitute debts of the corporation.

2. **SUBROGATION—RIGHTS OF LENDER OF MONEY.**
    The fact that the sums borrowed from plaintiff, after being paid by the borrowers on their indebtedness to the original owners of the stock, were used by the latter in paying debts of the corporation contracted before their contract to sell the stock, and the payment of which they had assumed, did not give plaintiff any claim against the corporation for the repayment of such sums; there being no proof that the former stockholders were insolvent.

3. **CORPORATIONS—POWERS—ASSUMING LIABILITY FOR DEBTS OF STOCKHOLDER.**
    Under the statute of Washington (1 Ballinger's Ann. Codes & St. § 4265) forbidding corporations to pay dividends, except from net profits, or to divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of the company, a corporation having no surplus profits has no power to pay, or to assume liability for, the individual debt of a stockholder.

**4. SAME—ACTION TO CHARGE UPON CONTRACT.**

    The burden rests upon one asserting rights against a corporation upon a contract purporting to have been made in its behalf by an officer, and which could in no event have been valid without the assent of all its stockholders and creditors thereto, to prove every fact necessary to its validity; and no presumption in its favor can be indulged.

This was an action against the receiver of defendant corporation to charge the corporation with liability for money loaned by plaintiff to its managers.

In the month of August, 1888, the Seatco Manufacturing Company, a corporation, was the owner of a sawmill and other property, constituting a lumbering plant, and a large stock of manufactured lumber and sawlogs, situated at Bucoda, in Thurston county, Washington Territory; and about that time a written agreement was made and entered into between the owners of the stock of said corporation, as parties of the first part, and J. B. Garland and Francis Rotch, as parties of the second part, whereby the first party agreed to sell to the second party all of said stock, for a price which was fixed upon the basis of the value of all the property owned by the corporation on the 1st day of September, 1888, and which, when the property was inventoried, was ascertained to amount in the aggregate to $127,000. It was further agreed that the party of the second part should have credit for part of the purchase price, to wit, $50,000, which was to be paid in three equal installments, in 6, 9, and 18 months, and said first party was to retain all of the stock as collateral security for said deferred payments, with authority, in case there should be a default in making said payments, to sell the stock, or sufficient of it to pay the whole of said purchase price, and to account to the second party for any excess. It was further agreed that said first party should pay all the debts of the corporation, and liabilities existing on the 1st day of September, 1888, and said second party should pay all the expenses of operating the mill, and receive all the profits therefrom, after said date, and should keep the mill and property insured for a specified amount, for the benefit of the first party, until the stock should be fully paid for. Under this agreement, Garland and Rotch took possession and assumed the management of the sawmill, but, being disappointed in their expectations as to the market for lumber during the first six months, they were unable to realize from the sale of lumber any part of the amount of the payment on their contract which came due in March, 1889; and to avoid a forfeiture of their contract, and loss of the large amount which they had paid on account of it, Mr. Rotch appealed to his relatives for a loan of $17,000 to make that payment. Thirteen thousand dollars of the amount required was advanced by the plaintiff, who is the grandfather of Mr. Rotch; and for said $13,000 Garland and Rotch gave to the plaintiff two promissory notes,—one for the sum of $8,000, and the other for $5,000,—bearing interest at the rate of 6 per cent. per annum. The plaintiff was fully informed as to the purpose for which the money was required, and the terms of the contract above mentioned, before making the loan; and the individual notes of Garland and Rotch were given, pursuant to his directions. The correspondence between Mr. Rotch and the plaintiff, introduced in evidence, shows that the plaintiff was informed of the operations of Garland and Rotch in connection with the sawmill during the summer of 1889; that they were enthusiastic in the expectation of doing a large and profitable business, and were anxious to make large investments in the purchase of timber lands. And, when the second payment on account of said contract for the purchase of the mill company's stock was about due, the plaintiff made a further advance to Garland and Rotch by a draft payable to their order for $17,500, which Mr. Rotch, in a letter to plaintiff dated October 7, 1889, stated would be applied to make said payment, with accrued interest. A promissory note, signed by the Seatco Manufacturing Company, by Garland as president, and Rotch as secretary of the company, was given to the plaintiff for said $17,500. There is no evidence tending to prove that the stock had prior to that time been transferred to Garland and Rotch, or that they had been elected president and secretary, respectively, of the company. On the contrary the evidence shows that the business of the company was conducted in an

98 F.—14

irregular manner. No corporate meetings were ever held, and no records were kept. Garland and Rotch merely assumed the full control and management of the company's business, and acted as president and secretary and managers, until the year 1894, when Mr. Garland died; and from that time Mr. Rotch assumed the office of president and sole manager, and controlled the business of the company. The whole of the $30.500 advanced by the plaintiff was actually used by Garland and Rotch to meet the payments due for the stock of the company under their contract for its purchase, and the vendors of the stock used the money which was paid to them by Garland and Rotch in paying up the debts of the corporation which existed prior to September 1, 1888. The interest on the three promissory notes above mentioned was paid to the plaintiff up to some time in the year 1893. In February, 1894, a promissory note for $780, signed by the Seatco Manufacturing Company, per Francis Rotch, secretary, was given to the plaintiff on account of accrued interest on the two notes for $8,000 and $5,000; and on October 15, 1894, a note for $1,050, signed in the same manner, was given to the plaintiff on account of accrued interest on the note for $17,500. No payments have ever been made on account of the principal. During all the time of the transactions involved in this suit, the plaintiff has resided at Gilbertsville, in the state of New York; and in the fall of 1894 he received a visit at his home from Mr. Rotch, who was then on a mission to raise a large sum of money by an issue of bonds of the defendant corporation; and upon representations then made by Mr. Rotch that the company was in urgent need of money, and upon assurance given by Mr. Rotch that, if successful in his scheme of floating bonds of the company, the entire amount of money which had been theretofore loaned by the plaintiff in the manner aforesaid, with accrued interest, would be repaid out of the money received from such issue of bonds, and that, if unsuccessful in raising money in that manner, the defendant corporation would nevertheless repay the said loans within a short time, and would give the plaintiff security therefor, the plaintiff was induced to, and did, make further advances to Mr. Rotch of various sums, amounting in the aggregate to $6,200. The defendant company, having become insolvent, was placed in the hands of a receiver by an order of the superior court of the state of Washington for the county of Thurston. Thereafter the plaintiff presented to the receiver his claim as a creditor of the defendant corporation for the entire amount, with accrued interest, due upon the four promissory notes above mentioned, and also for the several amounts advanced in the year 1894, which claim was allowed by the receiver for the money loaned in the year 1894, but was rejected, and the liability of the defendant corporation was denied, as to all the indebtedness upon said four promissory notes; and this suit was thereupon brought against the defendant corporation and its receiver to recover the several amounts due upon said notes. The evidence shows that the plaintiff was not credited upon the books of the company with any part of the money which he advanced on the several notes, and there is no evidence tending to prove that the company, by any corporate act, ever assumed an obligation to pay said notes, other than the oral testimony to the effect that Mr. Rotch assumed authority to make the promises above mentioned, and that the company received the $6,200 advanced upon the faith of said promises. In December, 1894, a paper purporting to be a statement of account between the plaintiff and the defendant company, showing credits for loans of $17,500 and $13,000 in favor of the plaintiff, was sent to the plaintiff in response to a request which he made to Mr. Rotch for a statement of his account with the company. But this paper is unsigned. It is shown by the testimony that it was not made up from the books of the company, but was made by the bookkeeper, pursuant to directions given by Mr. Rotch.

H. S. Griggs, for plaintiff.

J. W. Robinson and W. I. Agnew, for defendants.

HANFORD, District Judge (after stating the facts). In order to decide the questions raised by the arguments which have been made, it is necessary to consider the rights of the parties under the law as they existed at the time of each of the principal transactions.

It is insisted that the defendant corporation is bound to the same extent as it would be if the evidence showed that Garland and Rotch had acted for and in the name of the company, with full authority lawfully conferred, because they, being owners of all the stock, assumed to act for the company, and did continue to exercise full control and management of its affairs for such a length of time that the knowledge and assent of all the stockholders must be presumed; or, expressed in other words, that, in their dealings with the plaintiff, Garland and Rotch were the company. But, when the loan of $13,000 was made, the plaintiff knew very well that Garland and Rotch were unable to raise money by pledging the stock of the company, because the stock had not then been transferred to them, and it was already held as collateral security for the unpaid installments of the purchase money. The $13,000 was loaned for the express purpose of enabling them to fulfill the conditions of their contract by which they were to acquire the title to the stock. The physical property which the corporation owned was at that time under their control and management, but the corporation itself was not. They were not even qualified to become directors. They could not at that time bind the corporation to pay their debt for the money loaned to pay for their stock, without devesting the vendors of the security which they stipulated for, because the creation of such a debt would certainly impair the value of the stock. The situation was practically the same in October, 1889, when the loan of $17,500 was made. The plaintiff then knew that the stock had not been paid for, and that Garland and Rotch had no right to borrow money for their own purposes upon the credit of the corporation. The money did not go into the treasury of the corporation, and it was not loaned for the use or benefit of the corporation. Therefore, in giving the company's note, Garland and Rotch were not acting within the scope of the ordinary powers of officers or agents of the corporation, nor transacting business for it pursuant to any custom or practice which may be presumed to have been known to the persons who then held the company's stock. If the giving of the company's note for $17,500 may be considered as an act of the corporation, or a contract which the corporation assumed to make, it must be regarded as an assumption of liability for the mere accommodation of Garland and Rotch, to whom the money was advanced, and who applied it in payment of their individual indebtedness, to relieve themselves from personal liability to the vendors of the stock. Such contracts, when made with all the formalities required for the due execution of corporate powers, are ultra vires and void. Green's Brice, Ultra Vires, p. 252; 7 Am. & Eng. Enc. Law (2d Ed.) p. 793. Against this it is argued that a new doctrine has grown up in the law of corporations, and that now a corporation may assume obligations for the accommodation of its members, if done with the consent of all the stockholders, provided there are no creditors of the corporation to be prejudiced. This doctrine, however, cannot avail the plaintiff. We are now considering his rights as they were fixed at the time of making the loan, and at that time Garland and Rotch were not the only stockhold-

ers. On the contrary, they were bound by a contract, an essential condition of which was that they should make final payment of the stock before they could have it, and such payment had not been made at the time referred to. I deny, however, that any such proposition can be maintained as law in this state, so long as existing statutes continue in force. For many years we have had a statute forbidding corporations to pay dividends, except from net profits, or to divide, withdraw, or in any way pay to stockholders, or any of them, any part of the capital stock of the company. 1 Ballinger's Ann. Codes & St. Wash. § 4265. It would be just as much a violation of this statute to pay the individual debt of a stockholder out of corporate funds, when there are no surplus profits on hand, as to pay the money to a stockholder directly. Hence any unconditional promise by a corporation to pay the debt of a stockholder is a promise to violate the organic law under which corporations of this state are created.

Another argument in behalf of the plaintiff is that he is entitled to hold the corporation liable as his debtor for the money which he advanced, for the reason that the corporation was benefited by the loan, because the money, when paid by Garland and Rotch to the vendors of the stock, was used by the latter to pay the debts of the corporation existing prior to September 1, 1888; and it was said in the argument that, if the loan had not been made, the corporation would have remained obligated for its old debts. I can find nothing in the testimony to justify such a conclusion. The vendors of the stock by their contract with Garland and Rotch bound themselves absolutely to pay the company's debts, and it was for their interest to do so, in order to keep the value of their security unimpaired. If they had neglected to pay the debts, the property of the corporation might have been levied upon under writs of attachment or executions, the business of the corporation would have been interrupted thereby, and the stock which they held as security rendered worthless. There is no evidence that they were insolvent, nor is there any reason to suppose that, if they had not received the money due from Garland and Rotch, they would have failed to fulfill the obligation which they assumed by their contract. At any rate, the money was loaned to Garland and Rotch, and they used it to pay their individual debts before any of it was available in the hands of the vendors of the stock to pay debts of the corporation.

Passing now to a view of the situation, as disclosed by the evidence, in the fall of 1894, when it is claimed that the defendant corporation, in consideration of the new loans then made to it by the plaintiff, assumed liability for the loans theretofore made to Garland and Rotch, I cannot find any such change in the apparent or real position of either of the parties as would affect the rights of any one with respect to the validity of the assumption by the corporation of said debts. The new loans were made in November and December, 1894. At that time Mr. Garland was dead, and Mr. Rotch was the sole actor assuming to represent the defendant corporation. Whether Mr. Garland's stock had been sold or transferred, or was held by his personal representatives or heirs, does

not appear from any testimony in the case. Neither does it appear that any authority was given to Mr. Rotch, in a regular or irregular manner, by a vote of the directors of the corporation or the stockholders at any corporate meeting, or that he was ever elected to the office of president, in which capacity he assumed to act, or that the powers which he exercised were conferred in any manner, except by his own assumption. Therefore, if we consider only stockholders, the evidence fails to bring the case within the rule invoked, that a corporation may, with the consent of all its stockholders, become liable for debts of others. It is said that the evidence does not show that there were any creditors to become prejudiced; but I consider that it is a necessary inference from the facts shown in the evidence that the company at that time must have had creditors other than the plaintiff. The corporation was carrying on a manufacturing establishment, with a large amount of current expenses for wages and other necessary incidentals; and that it was struggling with financial difficulties is shown by the correspondence introduced in evidence, and by the fact that the plaintiff at that time yielded to the importunities of Mr. Rotch so far as to loan the company money in amounts ranging from $50 to $4,000, and Mr. Rotch was at that time endeavoring to raise money for the relief of the corporation by a large issue of bonds. The corporation certainly became insolvent and was placed in the hands of a receiver prior to the commencement of this action; and, in the absence of proof other than as above mentioned, the court certainly cannot presume that there were no creditors, or that any creditors consented to the assumption of debts amounting to over $30,000, with accrued interest thereon, in consideration of a new loan amounting to only $6,200. The transaction is so extraordinary that the court will not indulge in any presumption in regard to it. I hold that the burden rests upon the parties affirming that such a contract was made to prove it, and to prove all the facts necessary to establish its validity. In so far as the authority of Mr. Rotch to bind the corporation depends upon the consent of the stockholders or creditors, the case must fail, in the absence of a showing as to who were at that time all the stockholders, and all the creditors, and their consent to the action, or knowledge and acquiescence on their part.

The decision of the circuit court of appeals for the Ninth circuit in the case of G. V. B. Min. Co. v. First Nat. Bank of Hailey, 36 C. C. A. 633, 95 Fed. 23, cited by counsel for the plaintiff, does not, in my opinion, sustain the position which he has taken in this case. Judge Hawley was careful to say, in the opinion of the court in that case, that the general expressions in the opinion should be interpreted in the light of the peculiar facts which the court had to consider in deciding the case; and, when the important differences in the facts which distinguish this case from that are taken into account, the decision might well be laid aside without further comment than to say that the case is not in point. I can say, however, after an examination of the opinion, that the circuit court of appeals has not attempted to make any radical decision uprooting the settled principles of the law of corporations, but, on the con-

trary, the number of authorities cited in the opinion shows that the court intended to keep in line with the rules recognized by the courts of this country generally. It was not pretended in that case that the debt which the corporation defendant was endeavoring to repudiate was a debt of any person other than the corporation itself. The case referred to was a suit to foreclose a mortgage upon mining property owned by a corporation, which mortgage was given to secure a loan made to, and received by, the corporation. In the opinion, Judge Hawley lays particular emphasis upon the fact that:

"The corporation for several years had the benefit of money drawn from the bank, and upon divers notes which were renewed by the notes which the mortgage was given to secure."

And again, in the opinion, he makes the following strong declaration:

"The corporation, as we have already shown, had the unquestioned authority and power, under the law, to execute the notes and mortgage in question."

The case in hand is widely different. The plaintiff at the time of making the loans did not rely upon the credit of the corporation. The corporation did not receive his money, and it had no authority under the law to assume an obligation for the individual debts of Garland and Rotch. The following paragraph found in the opinion is applicable here:

"A contract of a corporation which is ultra vires is something outside the object of its creation, as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature. Such a contract is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side could give the unlawful contract any validity, or be the foundation of any right of action upon it. But, when a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such requisites might in fact have been complied with. The doctrine of ultra vires has been often said to rest upon three distinct grounds: (1) The obligation of persons dealing with a corporation to take notice of the legal limits of its powers; (2) the interest of the stockholders not to be subjected to risks which they have never undertaken; and (3) the interest of the public that the corporation shall not transcend the powers conferred upon it by law. The authorities bearing upon these general principles are well settled, and are clearly stated in Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 24-59, 11 Sup. Ct. 478, 35 L. Ed. 55, and Bank v. Kennedy, 167 U. S. 362-368, 17 Sup. Ct. 831, 42 L. Ed. 198, and in the numerous authorities there cited."

Independently of the question whether Garland and Rotch were authorized by the corporation to act as they did in signing the name of the corporation to the note for $17,500, and whether Rotch was authorized by the corporation to execute in its name the two notes given for accrued interest, or to make a verbal promise in behalf of the corporation to pay the indebtedness upon any of said notes, I consider that the plaintiff must fail in this case for the reason that the corporation itself had not the power at any time to bind itself to pay said notes, or either of them. I direct that findings shall be

prepared, for my signature, in accordance with this opinion, and a judgment be entered thereon that the plaintiff take nothing, and that the defendants recover costs.