## CALIFORNIA BANK v. KENNEDY.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 206. Argued and submitted March 10, 1897. — Decided May 24, 1897.

This court has jurisdiction to review a judgment of the highest court of a State, holding a national bank liable, under a statute of the State, as a shareholder in a state savings bank, when the answer sets up that the stock of the savings bank was issued to it without authority of law, and the motion for a new trial and the specifications of error which were the basis of appeal from the trial court to the Supreme Court of the State assert such want of power under the laws of the United States.

The statutes of the United States relating to the organization and powers of national banks prohibit such banks from purchasing or subscribing to the stock of another corporation, although they may, as incidental

to the power to loan money on personal security, accept stock of another corporation as collateral, and thus become subject to liability as other stockholders.

The want of such authority may be set up by a bank to defeat an attempt to enforce against it the liability of a stockholder.

THIS action was commenced. in the Superior Court of the county of San Diego, State of California, against the California Savings Bank, and other defendants, including the plaintiff in error. In each of five counts of an amended petition a separate cause of action was stated, seeking a judgment against the savings bank for the amount of a particular deposit of money alleged to have been made with it on a specified date, and a recovery was asked against the other defendants upon the ground that they were stockholders in the savings bank on the dates of the various deposits, and in consequence liable under the laws of California to pay the debts of the savings bank in proportion to the amount of stock held and owned by each stockholder. A demurrer to the amended complaint was overruled, and the California National Bank answered, denying that it was ever the owner of any stock in the savings bank, and alleging that if any such stock was ever issued to it, it was issued without due authority from the bank in its corporate capacity and without authority of law. The answer also averred that the bank never acquired "in the usual course of business or now has as owner any stock of the said defendant, the California Savings Bank."

No issue was taken upon the truth of the averments in the amended complaint as to the amount and date of the respective deposits which plaintiff alleged he had made in the savings bank.

From the evidence it appeared that the savings bank began business in January, 1890. Its stock consisted of twenty-five hundred shares, and was originally distributed in five certificates, each for 500 shares, one certificate being made in the name of each of the following persons: J. W. Collins, S. G. Havermale, D. D. Dare, William Collier and H. F. Norcross. Norcross had no official connection with the national bank,

but Collier, Dare and Collins were, respectively, president, vice president and cashier of the national bank, and were also, with Havermale, directors of the bank during the period when the alleged transfers of stock were made to the bank.

The certificates in the names of Collier and Norcross were never delivered, and when subsequently cancelled contained no indorsement. In the stead of those certificates, however, on September 10, 1890, three certificates, aggregating 990 shares, were issued in the name of J. W. Collins, cashier, and two certificates, each for five shares, were issued to Collier and Norcross, respectively. On January 2, 1891, the three certificates for 990 shares in the name of Collins, cashier, were surrendered, and a single certificate for that number of shares was issued in the name of the California National Bank.

In December, 1890, and January, 1891, five per cent dividends were declared and paid on the stock of the savings bank. The amount of each dividend received by the California National Bank was $750. No direct evidence was introduced accounting for these payments having been made on the basis of an ownership of 1500 shares, when the bank was sought to be held liable for and appeared to be the holder of but 990 shares, put in its name as above stated. Both the savings bank and the national bank became insolvent; the former suspending November 12, 1891, while the receiver of the national bank qualified December 29, 1891.

The cause was tried by the court without a jury, and by findings of fact and conclusions of law rested thereon the court sustained the averments of the complaint, adjudged the national bank to be the holder of 990 shares of the stock of the savings bank, and responsible to the creditors of the savings bank in that proportion. Judgment was entered against the savings bank for $47,497.75, and against the national bank for $18,507.52, a payment to the savings bank, however, to be a satisfaction of the judgment against the national bank. Both at the hearing, by objection to the introduction in evidence of the certificate of stock, and in a statement filed with the motion for a new trial, the point was made that the issue

of the stock to the bank was void because not shown to have been acquired pursuant to authority of its board of directors, and because the stock was not taken in the ordinary course of the business of the bank as security for the payment of a debt or otherwise. In addition, by the first, second and third specifications of errors of law occurring at the trial it was specially stated that error had been committed in admitting the certificate in evidence and holding the national bank liable — substantially the same language being employed in each specification — because the national bank, a corporation under the banking laws of the United States, could "not in law become a stockholder or incorporator in any other corporation." The motion for a new trial was overruled, and an appeal was taken to the Supreme Court of the State, by which court the judgment was affirmed. 101 California, 495. A writ of error was allowed, and the cause has been brought here for review.

*Mr. Edward Winslow Paige* for plaintiff in error.

*Mr. George Fuller*, *Mr. H. E. Doolittle* and *Mr. T. L. Lewis*, for defendant in error, submitted on their brief.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

Before discussing the merits, we will briefly consider and dispose of a suggestion that no Federal question appears by the record to have been properly raised below, and, therefore, there is a want of jurisdiction in this court to review the judgment. The answer averred that if any stock of the savings bank appeared to have been issued to the national bank, it was "issued without authority of this corporation defendant, and without authority of law." In view of the fact that the defendant was a national bank, deriving its powers from the statutes of the United States, the averment that a particular transaction of the character of the one in question, if entered into, was without authority of law, can, in reason, be construed only to relate to the law controlling and governing the conduct

of the corporation, that is, the law of the United States.   But
if there were ambiguity on this subject, it is entirely removed
by the grounds which were presented on the motion for a new
trial and the specifications of error which formed the basis of
the appeal which was taken to the Supreme Court of the State
of California, for in both the motion and specifications the want
of power under the laws of the United States was clearly as-
serted.  The Supreme Court of the State interpreted the case
brought to it from the court below as presenting the question
of the power of the corporation under the law of the United
States to become a stockholder in a savings bank, for in the
opening sentence of its opinion it said :

"The California National Bank, one of the defendants, has
appealed upon the ground that, by virtue of the statutes under
which it is organized, it had no power to become a stockholder
in another corporation, and that its act in becoming such stock-
holder is so far *ultra vires* that it cannot be made liable for any
portion of the indebtedness of the corporation."

The suggestion as to the want of jurisdiction is, therefore,
without merit.

The Federal questions which therefore arise on the record
may be thus stated : 1st, do the statutes of the United States,
Rev. Stat. § 5136 *et seq.*, relating to the organization and powers
of national banks, prohibit them from purchasing or sub-
scribing to the stock of another corporation ? and, 2d, if a
national bank does not possess such power, can the want of
authority be urged by the bank to defeat an attempt to enforce
against it the liability of a stockholder ?

*As to the first question.* — It is settled that the United States
statutes relative to national banks constitute the measure of
the authority of such corporations, and that they cannot right-
fully exercise any powers except those expressly granted, or
which are incidental to carrying on the business for which
they are established. *Logan County Bank* v. *Townsend*, 139
U. S. 67, 73.   No express power to acquire the stock of an-
other corporation is conferred upon a national bank, but it
has been held that, as incidental to the power to loan money
on personal security, a bank may in the usual course of doing

such business accept stock of another corporation as collateral, and by the enforcement of its rights as pledgee it may become the owner of the collateral and be subject to liability as other stockholders. *National Bank* v. *Case,* 99 U. S. 628. So, also, a national bank may be conceded to possess the incidental power of accepting in good faith stock of another corporation as security for a previous indebtedness. It is clear, however, that a national bank does not possess the power to deal in stocks. The prohibition is implied from the failure to grant the power. *First National Bank* v. *National Exchange Bank,* 92 U. S. 122, 128.

On behalf of the plaintiff below it was admitted at the trial that the stock of the savings bank was not "taken as security or anything of the kind," and it is not disputed in the argument at bar that the transaction by which this stock was placed in the name of the bank was one not in the course of the business of banking for which the bank was organized.

2. *The transfer of the stock in question to the bank being unauthorized by law, does the fact that, under some circumstances, the bank might have legally acquired stock in the corporation estop the bank from setting up the illegality of the transaction?*

Whatever divergence of opinion may arise on this question from conflicting adjudications in some of the state courts, in this court it is settled in favor of the right of the corporation to plead its want of power, that is to say, to assert the nullity of an act which is an *ultra vires* act. The cases of *Thomas* v. *Railroad Company,* 101 U. S. 71; *Pennsylvania Railroad* v. *St. Louis, Alton &c. Railroad,* 118 U. S. 290; *Oregon Railway & Navigation Co.* v. *Oregonian Railway Co.,* 130 U. S. 1; *Pittsburgh, Cincinnati &c. Railway* v. *Keokuk & Hamilton Bridge Co.,* 131 U. S. 371; *Central Transp. Co.* v. *Pullman's Car Co.,* 139 U. S. 24; *St. Louis &c. Railroad* v. *Terre Haute & Indianapolis Railroad,* 145 U. S. 393; *Union Pacific Railway* v. *Chicago &c. Railway,* 163 U. S. 564, and *McCormick* v. *Market Nat. Bank,* 165 U. S. 538, recognize as sound doctrine that the powers of corporations are such only as are conferred upon them by statute, and that, to quote from the

opinion of the court in *Central Transp. Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24, 59 to 60:

"A contract of a corporation, which is *ultra vires*, in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

This language was also cited and expressly approved in *Jacksonville &c. Railway* v. *Hooper*, 160 U. S. 514, 524, 530.

As said in *McCormick* v. *Market National Bank*, 165 U. S. 538, 549:

"The doctrine of *ultra vires*, by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subject to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law. *Pearce* v. *Madison & Indianapolis Railroad*, 21 How. 441; *Pittsburgh, Chicago &c. Railway* v. *Keokuk & Hamilton Bridge Co.*, 131 U. S. 371, 384; *Central Transp. Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24, 48."

The doctrine thus enunciated is likewise that which obtains in England. *Ashbury Railway Carriage & Iron Co.* v. *Riche*, L. R. 7 H. L. 653; *Attorney General* v. *Great Eastern Railway Company*, 5 App. Cas. 473; *Baroness Wenlock* v. *The River Dee Company*, 10 App. Cas. 354; *Trevor* v. *Whitworth*, 12 App. Cas. 409; *Ooregum Gold Mining Co. of India* v. *Roper*, (1892) App. Cas. 125; *Mann* v. *Edinburgh Northern Tramways*, (1893) App. Cas. 69.

Applying the principles of law thus settled to the case at bar, the result is free from doubt.

The power to purchase or deal in stock of another corporation, as we have said, is not expressly conferred upon national banks, nor is it an act which may be exercised as incidental to the powers expressly conferred. A dealing in stocks is consequently an *ultra vires* act. Being such, it is without efficacy. *Pearce* v. *Railroad Company*, 22 How. 441, 445. Stock so acquired creates no liability to the creditors of the corporation whose stock was attempted to be transferred. (Cook on Stock and Stockholders, vol. 1, p. 435, note 1 to sec. 316, and authorities there cited.)

In the *Royal Bank of India's case*, L. R. 4 Ch. 252 (1869), while it was held by the Court of Appeal that, as incidental to the power to advance money on a deposit of shares of stock, a corporation might do such acts as were reasonable and proper for making the security available, it was conceded' that a purchase of stock of another company as a speculation would have been *ultra vires*, and, despite acts of ownership exercised by the company, the shares might be repudiated at any time.

Sir C. J. Selwyn, L. J., said (p. 261) :

"If it could have been shown that it was an act absolutely prohibited by their memorandum of articles of association, then, no doubt, a different question would have arisen; the act would have been *ultra vires* and incapable of confirmation or ratification."

Sir G. M. Giffard, L. J., said (p. 262) :

"I quite agree that the Royal Bank of India had no authority to speculate in shares, and that if it had gone upon the Stock Exchange and bought shares as a speculation, such a proceeding would have been *ultra vires*, and all that has taken place would not have been enough to constitute the Royal Bank of India shareholders in this bank, or prevent them from repudiating these shares."

In *Ex parte Liquidators of the British Nation Life Assurance Association*, L. R. 8 Ch. Div. 679, (1879) the Court of Appeals (Lords Justices James, Baggally and Thesiger) dis-

charged an order of an arbitrator which had put the British Nation Association on the list of contributories of the British Commercial Insurance Company, a corporation in the process of being wound up. Pursuant to authority conferred by its deed of settlement, the British Nation Association had, through its directors, purchased the business of the British Commercial Insurance Company. Under the agreement entered into between the companies, certain stock of the British Commercial Company was transferred to the trustees appointed by the British Nation Company. Subsequently this stock was transferred into the name of the association, and it was sought to hold it liable as a stockholder, because of its alleged ownership of such stock. Lord Justice James delivered the opinion of the court, holding that while the British Nation Association was empowered to purchase for investment shares of a certain character, it was not empowered to purchase stock which would practically constitute it a partnership in business speculations or adventures, and that the transfer of the stock in question into the name of the bank was *ultra vires* and void. It was further held that the shareholders who had transferred the stock to the British Nation Association had no power, as between themselves and the association, to transfer their liability to the latter, and that —

" No other person or body of persons could be prejudiced or benefited or affected by an instrument to which they were absolutely strangers, such instrument being void as between the parties to it."

The case before the court was declared to be not one of a person induced to become a shareholder, and who had become a shareholder by fraud, but that of a person who had never in fact become a shareholder.

The circumstance that the dealing in stocks by which, if at all, the stock of the California Savings Bank was put in the name of the California National Bank, was one entirely outside of the powers conferred upon the bank, and was in nowise the transaction of banking business or incidental to the exercise of the powers conferred upon the bank, distinguishes this case from the class of cases relied upon by the defendant

in error. *National Bank* v. *Whitney*, 103 U. S. 99; *National Bank* v. *Matthews*, 98 U. S. 621. The difference between those cases and one like this was referred to in *McCormick* v. *Market National Bank of Chicago, supra,* and it is, therefore, unnecessary to particularly review them. The claim that the bank in consequence of the receipt by it of dividends on the stock of the savings bank is estopped from questioning its ownership and consequent liability, is but a reiteration of the contention that the acquiring of stock by the bank under the circumstances disclosed was not void but merely voidable. It would be a contradiction in terms to assert that there was a total want of power by any act to assume the liability, and yet to say that by a particular act the liability resulted. The transaction being absolutely void, could not be confirmed or ratified. As was said by this court in *Union Pacific Railway* v. *Chicago &c. Railway*, 163 U. S. 564, speaking through Mr. Chief Justice Fuller (p. 581):

"A contract made by a corporation beyond the scope of its powers, express or implied, on a proper construction of its charter, cannot be enforced, or rendered enforceable by the application of the doctrine of estoppel."

It follows from the foregoing that the judgment of the Supreme Court of California against the bank was erroneous, and it must, therefore, be

*Reversed.*

MR. JUSTICE HARLAN dissented.