## CONCORD FIRST NATIONAL BANK *v.* HAWKINS.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 187. Argued and submitted January 20, 1899. — Decided May 15, 1899.

The investment by the First National Bank of Concord, New Hampshire, of a part of its surplus funds in the stock of the Indianapolis National Bank of Indianapolis, Indiana, was an act which it had no power or

authority in law to do, and which is plainly against the meaning and policy of the statutes of the United States and cannot be countenanced; and the Concord corporation is not liable to the receiver of the Indianapolis corporation for an assessment upon the stock so purchased made under an order of the Comptroller of the Currency to enforce the individual liability of all stockholders to the extent of the assessment.

The doctrine of estoppel does not apply to this case.

IN May, 1895, Edward Hawkins, as receiver of the Indianapolis National Bank, brought a suit, in the Circuit Court of the United States for the District of New Hampshire, against the First National Bank of Concord. At the trial a jury was waived, and the court found the following facts:

"The plaintiff is receiver of the Indianapolis National Bank of Indianapolis, which bank was duly organized and authorized to do business as a national banking association. The bank was declared insolvent and ceased to do business on the 24th day of July, 1893; the plaintiff was duly appointed and qualified receiver of the bank on the 3d day of August, 1893, and took possession of the assets of the bank on the 8th day of the same month.

"The capital stock of the bank was 3000 shares of the par value of $100 each. On the 25th day of October, 1893, an assessment was ordered by the Comptroller of $100 per share on the capital stock of the bank, to enforce the individual liability of stockholders, and an order made to pay such assessment on or before the 25th day of November, 1893; and the defendant was duly notified thereof.

"The defendant, being a national banking association, duly organized and authorized to do business at Concord, N. H., on the 21st day of May, 1889, with a portion of its surplus funds, purchased of a third party, authorized to hold and make sale, 100 shares of the stock of the Indianapolis National Bank as an investment, and has ever since held the same as an investment. The defendant bank has appeared upon the books of the Indianapolis bank as a shareholder of 100 shares of its stock, from the time of such purchase to the present time. During such holding the defendant bank received annual dividends declared by the Indianapolis bank

prior to July, 1893. The defendant has not paid said assessment or any part thereof."

After argument the court, on July 28, 1896, entered judgment in favor of the plaintiff for the sum of $11,646.67 and costs. From that judgment a writ of error from the United States Circuit Court of Appeals for the First Circuit was sued out, and by that court the judgment of the trial court was, on March 5, 1897, affirmed. 33 U. S. App. 747. From the judgment of the Circuit Court of Appeals a writ of error was allowed to this court.

*Mr. Frank S. Streeter* for the Concord National Bank submitted on his brief.

*Mr. John G. Carlisle* for Hawkins. *Mr. J. W. Kern* was on his brief.

MR. JUSTICE SHIRAS, after making the above statement, delivered the opinion of the court.

The questions presented for our consideration in this case are whether one national bank can lawfully acquire and hold the stock of another as an investment, and, if not, whether, in the case of such an actual purchase, the bank is estopped to deny its liability, as an apparent stockholder, for an assessment on such stock ordered by the Comptroller of the Currency.

By section 5136 of the Revised Statutes a national banking association is authorized " to exercise by its board of directors, or duly authorized officers and agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking ; by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of indebtedness ; by receiving deposits ; by buying and selling exchange, coin and bullion ; by loaning money on personal security ; and by obtaining, issuing and circulating notes according to the provisions of this title."

In construing this provision, it was said by this court, in

*First National Bank* v. *National Exchange Bank,* 92 U. S. 122, 128, that "dealing in stocks is not expressly prohibited, but such a prohibition is implied from the failure to grant the power. In the honest exercise of the power to compromise a doubtful debt owing to a bank, it can hardly be doubted that stocks may be accepted in payment and satisfaction, with a view to their subsequent sale or conversion into money so as to make good or reduce an anticipated loss. Such a transaction would not amount to a dealing in stocks."

And in the recent case of *California Bank* v. *Kennedy,* 167 U. S. 362, it was said to be "settled that the United States statutes relative to national banks constitute the measure of the authority of such corporations, and that they cannot rightfully exercise any powers except those expressly granted, or which are incidental to carrying on the business for which they are established. . . . No express power to acquire the stock of another corporation is conferred upon a national bank, but it has been held that, as incidental to the power to loan money on personal security, a bank may, in the usual course of doing such business, accept stock of another corporation as collateral, and by the enforcement of its rights as pledgee it may become the owner of the collateral and be subject to liability as other stockholders. . . . So, also, a national bank may be conceded to possess the incidental power of accepting in good faith stock of another corporation as security for a previous indebtedness. It is clear, however, that a national bank does not possess the power to deal in stocks. The prohibition is implied from the failure to grant the power."

Accordingly it was held in that case that a provision of the laws of the State of California, which declared a liability on the part of stockholders to pay the debts of a savings bank, in proportion to the amount of stock held by each, could not be enforced against a national bank, in whose name stood shares of stock in a savings bank, it being admitted that the stock of the savings bank had not been taken as security, and that the transaction by which the stock was placed in the name of the national bank was one not in the course of the business of banking for which the bank was organized.

It is suggested by the learned Circuit Judge, in his opinion overruling a petition for a rehearing in the Circuit Court of Appeals, that the question considered in the case of *California Bank* v. *Kennedy* was the liability of a national bank as a stockholder in a state savings bank, while the question in the present case is as to its liability as a stockholder in another national bank, and that therefore it does not follow beyond question that the decision in the former case is decisive of the present one. 50 U. S. App. 178.

No reason is given by the learned judge in support of the solidity of such a distinction, and none occurs to us. Indeed, we think that the reasons which disqualify a national bank from investing its money in the stock of another corporation are quite as obvious when that other corporation is a national bank as in the case of other corporations. The investment by national banks of their surplus funds in other national banks, situated, perhaps, in distant States, as in the present case, is plainly against the meaning and policy of the statutes from which they derive their powers, and evil consequences would be certain to ensue if such a course of conduct were countenanced as lawful. Thus, it is enacted, in section 5146, that " every director must, during his whole term of service, be a citizen of the United States, and at least three fourths of the directors must have resided in the State, Territory or district in which the association is located for at least one year immediately preceding their election, and must be residents therein during their continuance in office."

One of the evident purposes of this enactment is to confine the management of each bank to persons who live in the neighborhood, and who may, for that reason, be supposed to know the trustworthiness of those who are to be appointed officers of the bank, and the character and financial ability of those who may seek to borrow its money. But if the funds of a bank in New Hampshire, instead of being retained in the custody and management of its directors, are invested in the stock of a bank in Indiana, the policy of this wholesome provision of the statute would be frustrated. The property of the local stockholders, so far as thus invested, would not be

managed by directors of their own selection, but by distant and unknown persons. Another evil that might result, if large and wealthy banks were permitted to buy and hold the capital stock of other banks, would be that, in that way, the banking capital of a community might be concentrated in one concern, and business men be deprived of the advantages that attend competition between banks. Such accumulation of capital would be in disregard of the policy of the national banking law, as seen in its numerous provisions regulating the amount of the capital stock and the methods to be pursued in increasing or reducing it. The smaller banks, in such a case, would be in fact, though not in form, branches of the larger one.

Section 5201 may also be referred to as indicating the policy of this legislation. It is in the following terms:

"No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale; or, in default thereof, a receiver may be appointed to close up the business of the association."

This provision, forbidding a national bank to own and hold shares of its own capital stock, would, in effect, be defeated if one national bank were permitted to own and hold a controlling interest in the capital stock of another.

Without pursuing this branch of the subject further, we are satisfied to express our conclusion, upon principle and authority, that the plaintiff in error, as a national banking association, had no power or authority to purchase with its surplus funds as an investment, and hold as such, shares of stock in the Indianapolis National Bank of Indianapolis.

The remaining question for our determination is whether the First National Bank of Concord, having, as a matter of fact, but without authority of law, purchased and held as an investment shares of stock in the Indianapolis National Bank,

can protect itself from a suit by the receiver of the latter brought to enforce the stockholders' liability, arising under an assessment by the Comptroller of the Currency, by alleging the unlawfulness of its own action.

This question has been so recently answered by decisions of this court that it will be sufficient, for our present purpose, to cite those decisions without undertaking to fortify the reasoning and conclusions therein reached.

In *Central Transportation Company* v. *Pullman's Car Co.*, 139 U. S. 24, after an examination of the authorities, the conclusion was thus stated by Mr. Justice Gray:

"It was argued in behalf of the plaintiff that, even if the contract sued on was void, because *ultra vires* and against public policy, yet that, having been fully performed on the part of the plaintiff, and the benefits of it received by the defendant, for the period covered by the declaration, the defendant was estopped to set up the invalidity of the contract as a defence to this action to recover the compensation agreed on for that period. But this argument, though sustained by decisions in some of the States, finds no support in the judgment of this court. . . . The view which this court has taken of the question presented by this branch of the case, and the only view which appears to us consistent with legal principles, is as follows:

"A contract of a corporation which is *ultra vires* in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not be authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it.

"When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped

to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such requisites might in fact have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped by assenting to it, or by acting upon it, to show that it was prohibited by those laws."

The principles thus asserted were directly applied in the case of *California Bank* v. *Kennedy*, 167 U. S. 362, 367, where the question and the answer were thus stated by Mr. Justice White:

"The transfer of the stock in question to the bank being unauthorized by law, does the fact that, under some circumstances, the bank might have legally acquired stock in the corporation, estop the bank from setting up the illegality of the transaction?

"Whatever divergence of opinion may arise on this question from conflicting adjudications in some of the state courts, in this court it is settled in favor of the right of the corporation to plead its want of power, that is to say, to assert the nullity of an act which is an *ultra vires* act. The cases . . . recognize as sound doctrine that the powers of corporations are such only as are conferred upon them by statute."

There is then quoted a passage from the decision of the court in *McCormick* v. *Market National Bank*, 165 U. S. 538, 549, as follows:

"The doctrine of *ultra vires*, by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subject to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law."

The conclusion reached was thus expressed:

"The claim that the bank, in consequence of the receipt

by it of dividends on the stock of the savings bank is estopped from questioning its ownership and consequent liability, is but a reiteration of the contention that the acquiring of stock by the bank, under the circumstances disclosed, was not void but merely voidable. It would be a contradiction in terms to assert that there was a total want of power by any act to assume the liability, and yet to say that by a particular act the liability resulted. The transaction being absolutely void, could not be confirmed or ratified."

In the present case it is sought to escape the force of these decisions by the contention that the liability of the stockholder in a national bank to respond to an assessment in case of insolvency is not contractual, but statutory.

Undoubtedly, the obligation is declared by the statute to attach to the ownership of the stock, and in that sense may be said to be statutory. But as the ownership of the stock, in most cases, arises from the voluntary act of the stockholder, he must be regarded as having agreed or contracted to be subject to the obligation.

However, whether, in the case of persons *sui juris*, this liability is to be regarded as a contractual incident to the ownership of the stock, or as a statutory obligation, does not seem to present a practical question in the present case.

If the previous reasoning be sound, whereby the conclusion was reached that, by reason of the limitations and provisions of the national banking statutes, it is not competent for an association organized thereunder to take upon itself, for investment, ownership of such stock, no intention can be reasonably imputed to Congress to subject the stockholders and creditors thereof, for whose protection those limitations and provisions were designed, to the same liability by reason of a void act on the part of the officers of the bank, as would have resulted from a lawful act.

It is argued, on behalf of the receiver, that the object of the statute was to afford a speedy and effective remedy to the creditors of a failed bank, and that this object would be defeated in a great many cases if the Comptroller were obliged to inquire into the validity of all the contracts by

which the registered shareholders acquired their respective shares.

The force of this objection is not apparent.  It is doubtless within the scope of the Comptroller's duty, when informed by the reports of the bank that such an investment has been made, to direct that it be at once disposed of, but the Comptroller's act in ordering an assessment, while conclusive as to the necessity for making it, involves no judgment by him as to the judicial rights of parties to be affected.  While he, of course, assumes that there are stockholders to respond to his order, it is not his function to inquire or determine what, if any, stockholders are exempted.

> *The judgment of the Circuit Court of Appeals is reversed, the judgment of the Circuit Court is also reversed, and the cause is remanded to that court with directions to enter a judgment in conformity with this opinion.*