## HIATT v. UNITED STATES.[*]

(Circuit Court of Appeals, Seventh Circuit. December 18, 1924. Rehearing Denied February 13, 1925.)

No. 3440.

1. Banks and banking ⊂⇒315(1)—Trust company held to have power to invest in stock of Federal Reserve Bank as personal security.

Under Burns' Ann. St. Ind. 1914, § 4953, authorizing trust companies to invest in "personal securities," such a company held to have power to purchase stock of a Federal Reserve Bank.

2. Banks and banking ⊂⇒315(1)—Power of trust company to become a member of the Federal Reserve System cannot be questioned collaterally.

The action of a trust company in becoming a member of the Federal Reserve System, though it might have been questioned by the state of its incorporation, was not such an ultra vires act as made the transaction void, so that it can be questioned collaterally, and its affiliation was validated by a legislative act expressly extending the power to such companies.

3. Evidence ⊂⇒34—Federal court will take judicial notice of Federal Reserve Banks.

A federal court will take judicial notice of the existence, due incorporation, and functions of a Federal Reserve Bank.

4. Banks and banking ⊂⇒288½, New, vol. IIA Key-No. Series—Making false entry in report of member bank to Federal Reserve Bank with intent to deceive an officer of the latter is an offense.

Under Rev. St. § 5209, as amended September 26, 1918 (Comp. St. Ann. Supp. 1919, § 9772), the making of a false entry by an officer of a member bank in a report to the Federal Reserve Bank, with intent to deceive any officer of the latter, is an offense.

5. Banks and banking ⊂⇒288½, New, vol. IIA Key-No. Series—Provision of Federal Reserve Act permitting state banks to become members of federal reserve system held constitutional.

The provision of Federal Reserve Act, § 9 (Comp. St. § 9792), permitting state banks to become members of the Federal Reserve System, is within the powers of Congress and constitutional.

6. Banks and banking ⊂⇒288½, New, vol. IIA Key-No. Series—Provision of Federal Reserve Act held not unconstitutional as affecting power of states over state banks.

Federal Reserve Act, § 9 (4), being Comp. St. § 9792, making member banks of the Federal Reserve System and their officers, agents, and employés subject to the provisions of Rev. St. § 5209 (Comp. St. § 9772), as applied to state banks, deals only with their relations to the Federal Reserve System, and is not unconstitutional as affecting the powers of the states over such banks.

*Certiorari denied 45 S. Ct. 638, 69 L. Ed. —.

In Error to the District Court of the United States for the District of Indiana.

Criminal prosecution by the United States against Edgar F. Hiatt. Judgment of conviction, and defendant brings error. Affirmed.

James W. Noel, of Indianapolis, Ind., for plaintiff in error.

John Rabb Emison, of Vincennes, Ind., for the United States.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. This is a writ of error to reverse a judgment of conviction before a jury in the District Court upon all of the 17 counts of an indictment, except the first. The offenses charged were committed while plaintiff in error was president of the Dickinson Trust Company, an Indiana corporation, and while, as charged, the trust company was a member of the Federal Reserve System.

In 1918, the Dickinson Trust Company, through the action of its board of directors, made application to purchase stock and to become a member in the Federal Reserve Bank of Chicago. The stock was received and paid for, and the trust company received the dividends thereon. While it appears that there was, in 1918, no special authority empowering the Dickinson Trust Company to become a member of the Federal Reserve System, yet, during all the time until September, 1922, neither the state of Indiana, the Dickinson Trust Company, nor any one else raised any question as to the relation.

In May, 1921, the state of Indiana bestowed upon trust companies the right to exercise the power and to possess the privileges conferred upon banks by the laws of Indiana, and all power properly incidental thereto or which might be necessary or usual in carrying on the business of banking, and also directly authorized such trust companies to become member banks in the Federal Reserve System. After the passage of the enabling act (Laws 1921, c. 20, § 3, subd. [9]) there was no change in the relations between the Dickinson Trust Company and the Federal Reserve System; the trust company continuing to function as a member bank as it had theretofore. All of the acts upon which the conviction was had were committed after the passage of the enabling act.

[1] 1. It is urged that the Dickinson Trust Company never became a member of the Federal Reserve System, because (a) under its charter, it had no power to join;

(b) it had no power to purchase stock in another corporation. One of the cases most strongly relied upon by plaintiff in error is Concord Bank v. Hawkins, 174 U. S. 364, 19 S. Ct. 739, 43 L. Ed. 1007. That transaction had to do with the purchase of stock in one bank by another. The court, quoting from California Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198, said:

"No express power to acquire the stock of another corporation is conferred upon a national bank, but it has been held that, as incidental to the power to loan money on personal security, a bank may in the usual course of doing such business accept stock of another corporation as collateral, and by the enforcement of its rights as pledgee it may become the owner of the collateral and be subject to liability as other stockholders. * * * So, also, a national bank may be conceded to possess the incidental power of accepting in good faith stock of another corporation as security for a previous indebtedness."

And such was the holding, notwithstanding the conclusion of the court in that case that there was no power in a national bank to deal in the stock of another national bank.

Subdivision sixth, par. 10, § 4953 (5009), p. 850, Burns' Ann. Indiana Statutes (Revision of 1914), under which the trust company was organized, provided that "the directors of any such corporation shall have discretionary power to invest all moneys received by it on deposit or in trust in any such personal securities as are not hereinafter expressly prohibited." "Personal securities" means security of a personal character, as distinguished from real estate. See California Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198, supra; Concord Bank v. Hawkins, 174 U. S. 364, 19 S. Ct. 739, 43 L. Ed 1007, supra; 6 Words and Phrases, p. 5362.

The above statutory provision directly authorizes investment in personal securities, and that right is recognized by the Indiana Supreme Court in Indiana Trust Co. Guardian v. Griffith, 176 Ind. 643, 95 N. E. 573, 44 L. R. A. (N. S.) 896, Ann. Cas. 1914A, 1023, where the suit was to compel the guardian to take out of the Griffith estate the bonds and stocks named. A demurrer was sustained to the answer, and a judgment was awarded against the guardian for $93,997.32. It appeared by the answer that there was $1,300 of the capital stock of the Indiana National Bank, $9,500 preferred stock of the Atlas Engine Works, and $3,000 of the preferred stock of Brown-Ketcham Iron Works,

involved in the account. The right to invest in stocks and bonds, as such, was not questioned. The guardian was held liable, not because it had purchased stocks and bonds, but because it failed to have its purchases approved by order of the court, as provided in the statute authorizing the purchase of personal securities. We are of opinion that, so far as investment in stock of the Federal Reserve Bank is concerned, it was such a personal security as the Dickinson Trust Company had the legal right and power to invest in under the provisions of the Indiana statute.

[2] 2. The matter of affiliation between the Dickinson Trust Company and the Federal Reserve Bank, aside from the investment in stock, seems to present merely a business arrangement between the Federal Reserve Bank and the trust company, which was not made under compulsion, and was doubtless regarded as advantageous by both concerns. It was simply an arrangement made for the advancement and in the interests of the business for which the trust company was chartered. Whether there ever was a time when that arrangement might have been brought in question by the state of Indiana, it was not such an ultra vires act as made the transaction absolutely void, so that the question could be raised collaterally. Whether there might have been a time when the state of Indiana might have raised the question of the right of the trust company to become a member of the Federal Reserve System seems now a moot question, because on May 31, 1921, prior to the happening of the matters charged in the indictment, the Indiana Legislature passed the enabling act, viz.:

"Such corporations shall exercise the powers and possess the privileges conferred on banks by the laws of this state and all powers properly incidental thereto or which may be necessary or usual in carrying on the general business of banking, subject to the restrictions imposed by the laws of this state relative to a general banking business; and shall have the power and authority to purchase and hold, for the purpose of becoming a member of a Federal Reserve Bank, so much of the capital stock thereof as will qualify it for membership in such reserve bank, pursuant to an act of Congress, approved December 23, 1913, entitled the 'Federal Reserve Act'; to become a member of such Federal Reserve Bank, and to have and exercise all powers, not in conflict with the laws of this state, which are conferred upon any such member by the Federal Reserve Act." Section 3, subd. 9.

The trust company thereafter continued to function as a member of the Federal Reserve Bank the same as before, carrying the stock, collecting dividends thereon, and receiving the benefits accruing from the affiliation. It was not within the power of the state, the trust company, or any one else, after the enabling act, to raise the question here presented. The enabling act was not, as urged, an amendment of the charter powers of the trust company; it was, at most, an extension of its right to enter into a relation incident to its business, the right to do which was possibly considered doubtful.

[3] 3. It is urged that there was no proof of the incorporation of the Federal Reserve Bank of Chicago or that it was one of the Federal Reserve Banks created by the act. This court, in Hill v. United States, 275 F. 187, 189, said:

"In view of the act of Congress creating the Federal Reserve Bank (38 Stat. 251), we think the court was justified in taking judicial notice of the fact that the Federal Reserve Bank of St. Louis is an association engaged in a banking business. Matter of Dunn, 212 U. S. 374, 29 S. Ct. 299, 53 L. Ed. 558; Beck v. Johnson (C. C.) 169 F. 154; Leonard v. Lennox, 181 F. 760, 104 C. C. A. 296."

In United States v. Williams, 28 Fed. Cas. 635, No. 16706, it was held that, in an indictment for the felonious possession of a forged national bank note, it is not necessary that the indictment should aver that the bank is a legal corporation; that the federal courts will judicially take notice of the existence of all national banks.

[4] 4. Refusal to give requested instruction 2, as follows, was not error:

"The seventeenth count of the indictment charges the defendant with the making of a false entry in a report of the Dickinson Trust Company to the Federal Reserve Bank of Chicago with the intent to injure and defraud said Dickinson Trust Company and to deceive the Federal Reserve Bank of Chicago and the officers of said bank. You are instructed that the making of a false entry by an officer of a member bank in a report of a member bank to a Federal Reserve Bank with intent to deceive such Federal Reserve Bank or its officers is not an offense under the statute which defendant is charged with violating, and unless you find that said entry in said report was made with the intent to injure and defraud the Dickinson Trust Company your verdict as to said seventeenth count must be 'Not guilty.'"

The claim is that the words of the indict-

ment "and to deceive the Federal Reserve Bank" are surplusage, because "the statute only makes it an offense to make such false entry in a report of a member bank, with intent to injure or defraud such member bank, or its officers." Rev. St. § 5209, as amended September 26, 1918 (Comp. St. Ann. Supp. 1919, § 9772), as printed in plaintiff in error's brief, reads in part:

"Any officer * * * of any member bank * * * who makes any false entry in any book, report or statement of such Federal Reserve Bank, or member bank, with intent in any case to injure or defraud such Federal Reserve Bank or member bank * * * or to deceive any officer of such Federal Reserve Bank or member bank or the Comptroller of the Currency, or any agent or examiner appointed to examine the affairs of such Federal Reserve Bank or member bank or the Federal Reserve Board * * * shall be deemed guilty of a misdemeanor," etc.

The statute plainly makes it an offense to make a false report, with intent to deceive any officer of the Federal Reserve Bank, whereas the instruction would have told the jury the exact opposite. The court, after quoting the statute to the jury, said:

"That is, whoever makes any entry—any false entry—in any book, report, or statement of such Federal Reserve Bank, or member bank, with intent to injure or defraud such Federal Reserve Bank, or member bank, or with intent to deceive any officer of such Federal Reserve Bank, or member bank, shall be guilty," etc.

No exception was taken to that instruction, but the sole exception was to the refusal to give requested instruction 2. The jury was fairly instructed.

[5] 5. The contention that the provisions of the Federal Reserve Banking Act, c. 6 (38 Stat. 251) authorizing any bank or trust company of a state to become a member bank of the Federal Reserve System are beyond the constitutional powers of Congress seems hardly open for discussion. In First Nat. Bank v. Fellows, 244 U. S. 416, 420, 37 S. Ct. 734, 735 (61 L. Ed. 1233, L. R. A. 1913C, 283, Ann Cas. 1918D, 1169), the Supreme Court, interpreting Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204, and McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, has said:

"The ruling in effect was that, although a particular character of business might not be, when isolatedly considered, within the implied power of Congress, if such business was appropriate or relevant to the banking business, the implied power was to be tested

by the right to create the bank and the authority to attach to it that which was relevant in the judgment of Congress to make the business of the bank successful."

When the Federal Reserve System was created, the banking business of the states and of the nation was done by national banks incorporated under federal law, state banks incorporated under state laws, and unincorporated private banks. While there had necessarily grown up business relations between the various banks, regardless of their origin, they were largely voluntary. Without going fully into the causes which produced the Federal Reserve System or the purposes of its creation, further than those expressed in the title, viz. "To provide for the establishment of Federal Reserve Banks, to furnish an elastic currency, to afford means of rediscounting commercial paper, to establish a more effective supervision of banking in the United States, and for other purposes," it is sufficient to say that it had long been recognized that for the purpose of carrying on undisturbed the necessary business and financial operations of the government some system should be devised whereby the banking operations of the country could be controlled and sudden and violent crises in financial affairs prevented. If, in the wisdom of Congress, it seemed that the inclusion of state banks and trust companies would contribute to such and other legitimate purposes of the Federal Reserve System, the right to so include them would seem not now open to question. The government may make use of concerns incorporated under state charters. Latinette v. City of St. Louis, 201 F. 676, 120 C. C. A. 638, decided by this court; Cherokee Nation v. Kansas Ry. Co., 135 U. S. 641, 10 S. Ct. 965, 34 L. Ed. 295; California v. Pacific R. R. Co., 127 U. S. 1, 8 S. Ct. 1073, 32 L. Ed. 150. The provision for membership of state banks in the Federal Reserve System is in no sense compulsory. We are of opinion that Congress was clearly within its constitutional rights in authorizing the admission of state banks and trust companies to the privileges and benefits of member banks in the Federal Reserve System.

[6] 6. One of the conditions imposed upon member banks by the Act of December 23, 1913, c. 6, § 9, subd. 4 (38 Stat. 251; Comp. Stats. § 9792), is:

"Such banks and the officers, agents, and employés thereof, shall also be subject to the provisions of and to the penalties prescribed by sections 5198, 5200, 5201 and 5208 and 5209 of the Revised Statutes."

It is urged that the provisions of section 5209 (Comp. St. § 9772), supra, as thus applied are repugnant to the federal Constitution and beyond the power of Congress, the theory being that they necessarily withdraw from the state the power to enact criminal laws with respect to the same offenses and suspend the operation of such criminal statutes touching the offences enumerated in the section. The main reliance, in support of this contention, is upon Easton v. Iowa, 188 U. S. 221, 23 S. Ct. 288, 47 L. Ed. 452. That case and others cited are examples of attempts on the part of the state to punish, as criminal, certain acts done, not only by officers of state banks, but also by officers of national banks, and the Supreme Court held that such statutes, as applied to national banks are void, but the reasons there urged have nothing to do with the question here involved. It is to be noted that the acts which were made offenses under section 5209 are those committed by officers of a state bank pertaining to matters affecting the relations between the member bank and the Federal Reserve Bank. It must be apparent that the commission of acts made punishable by that section would necessarily affect the relations between the member bank and the Federal Reserve Bank, and also would affect injuriously the Federal Reserve Bank System. The Supreme Court in United States v. Lanza, 260 U. S. 377, 382, 43 S. Ct. 141, 142 (67 L. Ed. 314), said:

"We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory. Each may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the amendment. Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other."

That has been the holding of the Supreme Court and many other courts ever since the case of Fox v. Ohio, 46 U. S. (5 How.) 410, 12 L. Ed. 213. See, also, 16 Corpus Juris, p. 602, § 18; Grafton v. United States, 206 U. S. 333, 27 S. Ct. 749, 51 L. Ed. 1084, 11 Ann. Cas. 640. In 19 Rose's Notes, p. 1036, on the Grafton Case, the distinction between that case and other cases, as pointed out by the court, only serves to emphasize the correctness of the authorities above cited.

The judgment is affirmed.