SARA A. TWOHY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

DANIEL W. TWOHY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62605, 62907. Promulgated April 24, 1936.

*H. E. Fraser*, *Esq.*, for the petitioners.
*S. B. Anderson*, *Esq.*, for the respondent.

448

OPINION.

McMahon: The petitioners contend that the so-called dividend of $140,000 was such only in name and should not be regarded as a taxable dividend, being but a single step in a series of transactions not entered into for profit, not enriching any of the stockholders, and merely being a matter of bookkeeping. The respondent, however, contends that such dividend is taxable and that the facts herein are similar to those in *John G. Lonsdale*, 11 B. T. A. 659; affd., *Lonsdale v. Commissioner*, 32 Fed. (2d) 537; certiorari denied, 280 U. S. 575; in which case a national bank declared a dividend which was applied to purchase stock in a trust company organized to transact business in which the national bank could not engage. The petitioners contend that the *Lonsdale* case, *supra*, is distinguishable as no subscription for stock was involved in the distribution herein, and that such distribution was not for the purpose of forming a new corporation, but an attempt to save a serious banking situation.

The evidence discloses that in February 1929 the Exchange Bank, one of the oldest banks of Spokane, failed; that thereafter the Brotherhood Bank, located near the Fidelty Bank, after a run upon it, closed, which caused a run on the Fidelity Bank and the failure of several smaller banks; that it was decided to nationalize the Union Trust and merge the Fidelity Bank with the Union Trust; that there were some assets which the examiners did not want in the bank, amounting to $140,000, and the only way to raise the $140,000 was

to take it out of the surplus of the Old National; and that the special dividend was declared and the Union Trust nationalized and merged with the Fidelity Bank, not only to relieve the threatened financial difficulties of the Fidelity Bank and such as might result from its threatened failure, but also as a part of a comprehensive plan which involved the creation of a holding company, known as the Old National Corporation, for the purpose of taking over the Old National and the First National Bank. Whatever causes or reasons prompted the issuance of the dividend of $140,000, the evidence shows that the dividend was issued out of the undivided profits of the Old National, and there is no evidence showing that it received anything in return therefor. The evidence further shows that pursuant to the agreement with the stockholders the $140,000 was turned over to the three trustees and by them turned over to the Investment Co., which in turn paid it to the First National Bank, together with the $220,000 capital and surplus of the Union Trust, and that the Investment Co. received therefor stock of the First National Bank. These facts show that the provisions of the resolution were substantially carried out. While the resolution stated that "the Union Trust & Savings Bank will obtain a national charter, then purchase a certain amount of the capital stock of the Fidelity National Bank", which quoted provision is open to the construction that the Union Trust after being nationalized would buy the stock of the Fidelity Bank, it however stated, following the quoted provision, "as per agreement" of the stockholders, which provided for a merger of the two banks. As stated on brief by petitioners, *First National Bank of Concord* v. *Hawkins*, 174 U. S. 364, is authority for the principle that a national bank can not lawfully purchase stock in another national bank. It was known that neither the Old National nor the First National Bank could take over the Fidelity Bank by a purchase of its stock. The purchase of its good will and stock was accomplished by merger with the First National Bank as expressly provided in the stockholders' agreement. The language of the resolution proper must be construed in the light of the stockholders' agreement which is a part of the resolution. In our opinion the proof does not disclose an abandonment of the plan as outlined in the resolution as claimed by the petitioners.

Although the capital and surplus of the Union Trust and the dividend, in both of which the stockholders of the Old National had a prior interest, was used in these transactions, a new and different entity, with different rights and powers and subject to other laws, was created by the merger of the Union Trust, changed from a state trust company to a national bank under Federal laws, and an entirely theretofore unconnected and unaffiliated national bank. The dividend was declared by the Old National and its stockholders con-

sented to have such dividend applied to the purchase of the stock of the First National Bank, a new entity, separate and distinct from the Union Trust and possessing new and different assets from those theretofore possessed by the Union Trust. It is to be noted that the Fidelity Bank was not taken over under the so-called Spokane plan, as were the Exchange Bank and the Brotherhood Bank. As far as we know no dividend was declared and paid by the Old National to take over such banks. The case of *Mrs. Frank Andrews*, 26 B. T. A. 642, is also controlling here. It involved a similar question and the facts therein are more similar to those in the instant proceedings than the facts in the *Lonsdale* case, *supra*, in that there the plan involved no subscriptions for stock and the stockholders did not receive stock in exchange for the dividend; the plan called for the unanimous consent of the stockholders in advance of the dividend declaration, the stockholders having no other alternative than to apply the dividend in the manner proposed; the dividend was paid to trustees, and the certificates of stock of the parent company were endorsed to show that they carried with them a pro rata share in the new corporation. The Board therein held that a dividend declared by a national bank, which pursuant to an agreement with its stockholders was paid to trustees for their account for the purpose of organizing a subsidiary corporation and acquiring its capital stock, is taxable income to the stockholders though not actually received by them. Under the agreement of the stockholders, the stockholders expressly authorized and empowered the person or persons to be designated by the Old National to receive on their behalf and as their agent the special dividend declared by such bank, and under that agreement the bank turned over the check covering the dividend to the three trustees, who thereby became the agents of the stockholders to receive the dividend in their behalf. The receipt of income by an agent is receipt by the principal. *Fremont C. Peck et al., Executors*, 31 B. T. A. 87; affd., 77 Fed. (2d) 857; certiorari denied, 296 U. S. 625; *J. L. McInerney*, 29 B. T. A. 1; *Frank E. Best*, 26 B. T. A. 1070. The facts here are not so different as to justify a conclusion other than that reached in the *Lonsdale* case and the *Andrews* case.

It was testified by the chief counsel of the Old National that no "profit was contemplated out of the transaction"; that the "$140,000 was really a loss" and that it was not expected that the stockholders of the Old National would be benefited by the transaction. Daniel W. Twohy, petitioner, testified that there was no thought of profit in the declaration of the dividend and that "In fact, we knew it would entail a loss." However, there is no evidence showing that the $140,000 was lost to the stockholders in 1929. It was invested in the new First National Bank and as far as we know it remained

in that bank during 1929. We are not concerned here with the question of whether or not the investment of the dividend was intended to be or proved to be profitable to the stockholders or to the companies involved. The question before us is whether under all the circumstances present here the special dividend of 1929 is taxable to these petitioners.

The respondent, in effect, determined that the special dividend herein constituted taxable income to the petitioners under section 22 of the Revenue Act of 1928, which provides that gross income includes, among other things, "gains or profits and income from any source whatever." Furthermore, section 25 of the 1928 Act provides that there shall be allowed as a credit against net income, for the purpose of the normal tax, but not for the surtax, the amount received as dividends from a domestic corporation, and section 115 (a) of the same act defines "dividend" as *any distribution made by a corporation* to its shareholders, whether in money or other property, *out of its earnings or profits* accumulated after February 28, 1913." (Emphasis supplied.) These provisions contemplate that dividends are a part of taxable net income and that they are allowable as a credit for the purpose of computing the normal tax only. The dividend here is also within the definition of section 115 (a), since, as heretofore stated, it was distributed out of the undivided profits of the Old National to the trustees acting on behalf of its stockholders and as their agents.

The burden of proof that their prorata shares of such dividend was not income to them rested upon the petitioners. *Welch* v. *Helvering*, 290 U. S. 111. In our opinion they have failed to discharge such burden.

We are of the opinion that the dividend of $140,000 distributed by the Old National Bank is taxable as such, and the action of the respondent herein is approved.

*Decision will be entered for the respondent.*