**ROSE ISLAND CO. v. UNITED STATES.**
**No. 45796.**

Court of Claims.
Dec. 3, 1945.

JONES, Judge, dissenting.

Maurice H. Thatcher, of Washington, D. C. (Fred B. Rhodes, of Washington, D. C., on the brief), for appellant.

E. E. Ellison, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen. (Clay R. Apple, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff entered into a contract with the Works Progress Administration to deliver 19,300 tons of riprap and spalls to the Jeffersonville Revetment Project at Jeffersonville, Ind. The contractor was to furnish all equipment and labor except that, for breaking the stone and loading it into trucks, the WPA agreed to furnish 250 man-hours of common labor per 100 tons of stone. The contract provision for furnishing labor read:

"The Works Progress Administration will furnish common labor for breaking stone and loading to trucks up to a maximum of 250 man-hours for each 100 tons of stone delivered of size specified. The contractor receiving the bid will include supervision for this operation. All labor needed in addition to the 250 man-hours per 100 tons of stone shall be furnished by the individual or firm receiving the bid.

"Stone to be transported by all-steel boat from Rose Island Quarry downstream 14 miles. Capacity of boat 500 tons or more. Stone to be loaded on chute direct from quarry into boat."

Except for this, the contractor was supposed to supply all equipment and all other labor necessary to perform the contract.

After 9,842.91 tons of stone had been delivered the defendant canceled the contract. The plaintiff sues for damages alleged to have been sustained due to the inefficiency of the labor furnished and due to the cancellation of the contract. The plaintiff says that the laborers furnished by the WPA were careless, indifferent, and shiftless, and that they committed deliberate acts of sabotage to its equipment.

The quarry was located on a peninsula at the confluence of the Ohio River and Fourteen-Mile Creek. It was located on the top of a bluff about 200 feet above the level of the river. The plaintiff planned to transport the stone from the quarry to the boats by way of a chute which it had constructed for the purpose. This chute was made of heavy timbers overlaid with boiler plate. It was very steep. At intervals four bumpers had been placed on it to retard the velocity of the rock in its descent.

These, however, were being constantly damaged, necessitating stoppage of the work until they could be repaired. Much of the rock jumped over the sides of the chute and some of it plunged into the river. The chute proved to be impracticable and had to be abandoned.

The plaintiff says the chute had to be abandoned because the men placed in the chute rocks that were too large and placed too many at one time. We are not convinced by the testimony that this is so. We are inclined to believe that the chute was impractical, however carefully it might have been used.

But whether or not the men exercised sufficient care, we do not think the defendant is liable for any resulting damage. All that the Works Progress Administration agreed to do was to furnish a certain amount of labor "for breaking stone and loading to trucks." Whether they were supposed to put the rock in the chute is not clear, but whether or not they were, the defendant is not liable for the damage done in doing so because the contract provided that "the contractor receiving the bid will include supervision for this operation." It was, therefore, the contractor's duty to see to it that the men did their work properly, and if they did not do so, the fault was the contractor's, and not the defendant's.

It is true that the work was not carried on in the way provided for in the contract. The contractor had an overall superintendent on the job, but the Works Progress Administration employed a man to supervise the WPA laborers, although the contract provided that the plaintiff should do this. The liability of the defendant, however, is determined by the contract as entered into by its authorized representatives. That contract required the contractor to supervise the work of the WPA laborers, and that duty remained on the contractor until it was relieved of it by competent authority. There is no proof that the contracting officer ever agreed that the defendant should take over the job of supervising these WPA laborers. In the absence of such an agreement, the defendant is not liable for any damages resulting from the failure of these men to do their work properly. It was not obliged by the contract to supervise their work and, therefore, cannot be liable for a failure to properly supervise it. All the defendant was obligated to do was to furnish plaintiff with 250 man-hours of labor for each 100 tons of stone

delivered. This it did. It was plaintiff's responsibility to direct these men in the doing of their work. For the results accomplished with them plaintiff is alone responsible.

What we have said also applies to plaintiff's claim that the men did not do as much work as they should have done. Moreover, the evidence convinces us that the men furnished were as good as plaintiff had a right to expect. They were strong, husky men, the best the WPA had available, although inexperienced in this sort of work, and they gave for the most part an honest day's work; those that did not were discharged. Plaintiff's claim of deliberate sabotage is refuted by the testimony of its own superintendent. We are convinced plaintiff got out of these men all that it had a right to expect.

Much of plaintiff's loss was due to its unfamiliarity with operating a quarry, to the quarry's inaccessibility, and to the inadequacy of its chute. After the chute was abandoned the rock was thrown over the bluff and then was loaded into trucks at the foot of the bluff and carried on to the boat. From one-third to one-fourth of the rock thrown over the bluff was broken up from the fall and could not be used.

We are of opinion plaintiff is not entitled to recover on account of the labor furnished.

On October 20, 1938, the project superintendent notified plaintiff that it would not be permitted to deliver any more rock since the funds for the project had been exhausted. This was about a year and three months after the contract had been signed. At this time 9842.91 tons of the total of 19,300 had been delivered. Later, on July 10, 1939, the Chief of the Purchasing Division of the Procurement Division of the Treasury Department asked plaintiff to consent to a formal cancellation of the contract, but plaintiff refused to do so. Plaintiff claims damages for an alleged unauthorized cancellation of the contract.

Whether or not defendant breached its contract in refusing to accept delivery of any more stone, we do not think plaintiff is entitled to recover, because its charter gave it no power to enter into this contract. The plaintiff's charter authorized it to conduct a public entertainment and amusement park. It was not authorized to run a stone quarry nor to sell stone. Because it was not, Mr. Rose, the president of the Rose Island Company, organized the Ohio Valley Stone Corporation; but, for some unexplained reason, no use was ever made of this company. The quarry site was not transferred to it, nor was it this latter company, but the Rose Island Company, which entered into the contract with the defendant. This was clearly beyond the charter powers of the Rose Island Company.

For that part of the contract which was executed plaintiff has been paid, and it is clear under the authorities that it cannot recover on account of that part of an ultra vires contract, which has not been performed. California Bank v. Kennedy, 167 U.S. 362, 367 et seq., 17 S.Ct. 831, 42 L. Ed. 198; Fletcher Cyclopedia Corporations, Vol. 7, §§ 3459, 3527 and 3528, and cases there cited. See other cases cited in 13 American Jurisprudence, pp. 787, 788, notes 12 and 15.

We are of opinion plaintiff is not entitled to recover. Its petition will be dismissed. It is so ordered.

WHALEY, Chief Justice, and LITTLETON, Judge, concur.

JONES, Judge, dissents.

MADDEN, Judge, took no part in the decision of this case.