WILLIAMS v. COBB.

(Circuit Court of Appeals, Second Circuit. December 15, 1914.)

No. 8.

1. BANKS AND BANKING ⊕⟹248—NATIONAL BANKS—LIABILITY OF STOCK-HOLDERS.

Though, under the rules and practice of the courts of Wisconsin and Laws Wis. 1903, c. 317, authorizing the investment of trust funds in certain securities, executors had no authority to invest a trust fund in shares of stock in a national bank, where they did transfer stock owned by the estate to themselves as trustees, caused the stock to be transferred on the books of the bank, and filed their final account showing such transfer more than a year before the bank failed, the transfer was voidable only and not void, and, so long as it was permitted to stand, neither the estate nor a legatee, made liable by statute for contingent claims becoming absolute after the distribution of the estate, were liable for an assessment against the stock by the comptroller of the currency.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 913–915, 919–931; Dec. Dig. ⊕⟹248.]

2. TRUSTS ⊕⟹217—INVESTMENT OF TRUST FUNDS—DIRECTIONS OF WILL—"IN-TEREST-BEARING SECURITIES."

A will directing executors to invest a trust fund in "interest-bearing securities" did not authorize the investment thereof in the stock of a national bank, since, while shares of stock may be securities, they are not interest bearing.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–304, 306–309; Dec. Dig. ⊕⟹217.]

3. EXECUTORS AND ADMINISTRATORS ⊕⟹303—DISTRIBUTION OF ESTATE—EX-ECUTOR AS LEGATEE.

When an executor is also a legatee or distributee, no formal act is necessary to vest title to the legacy or distributive share in him as an individual, and any act on his part, showing an intention to retain assets in payment, is sufficient.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1229–1242, 1245; Dec. Dig. ⊕⟹303.]

4. EXECUTORS AND ADMINISTRATORS ⊕⟹158—SALE OF PERSONAL PROPERTY—AUTHORITY TO SELL.

In the absence of statute providing otherwise, an executor or administrator has the absolute power to sell or dispose of the personal assets of the estate as he sees fit, and can pass a good title to the property without any order of court.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 634, 635, 646½; Dec. Dig. ⊕⟹158.]

5. EXECUTORS AND ADMINISTRATORS ⊕⟹163—SALE OF PERSONAL PROPERTY—PURCHASE BY EXECUTOR.

When an executor sells stock owned by the estate to himself individually, he does that which he has no right to do, but which he has a ca-

⊕⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pacity to do, and the transaction is not void but voidable only at the option of those interested.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 640; Dec. Dig. ☞163.]

6. BANKS AND BANKING ☞249—NATIONAL BANKS—LIABILITY OF STOCK-HOLDERS.

Under Rev. St. § 5152 (Comp. St. 1913, § 9690), providing that persons holding stock as executors, administrators, guardians, or trustees shall not be personally liable as stockholders in national banks, but that the estate and funds in their hands shall be liable, where a trustee improperly invested the trust fund in the stock of a national bank, the beneficiary had the right, when the nature of the investment was brought to her attention, to accept or reject it, and if she accepted it, or lost her right to reject it by laches or acquiescence, she would be liable as a stockholder.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 916–918; Dec. Dig. ☞249.]

7. APPEAL AND ERROR ☞959—EQUITY ☞267—AMENDMENT—DISCRETION OF COURT.

The allowance or refusal of leave to amend a pleading is a matter largely within the sound discretion of a trial court, and, in the absence of a clear abuse thereof, its action is not reviewable on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3825–3831; Dec. Dig. ☞959; Equity, Cent. Dig. §§ 545, 546; Dec. Dig. ☞267.]

8. EQUITY ☞267—AMENDMENT OF PLEADING—DISCRETION OF COURT.

In an action against an executor for the amount of an assessment against the stock of an insolvent national bank improperly brought against him individually on the theory that a transfer of stock owned by the estate to the executors as trustees was void, leaving title thereto in the estate, and that the executor was liable as legatee under a statute making legatees liable for contingent claims becoming absolute after the distribution of the estate, the court did not abuse its discretion in refusing to allow the bill to be amended to cure the defects.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 545, 546; Dec. Dig. ☞267.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a final decree dismissing the bill of complaint and entering final judgment for defendant entered in the United States District Court for the Southern District of New York on January 16, 1912.

Dichman & Heffernan, of New York City (John Francis Heffernan, John M. Nolan, and Joseph P. Nolan, all of New York City, of counsel), for appellant.

K. R. Babbitt, of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The First National Bank of Mineral Point, Wis., was a national banking association duly organized and existing under and by virtue of the laws of the United States. And on October 11, 1909, it was found by the Comptroller of the Currency of the United States to be insolvent and unable to pay its debts. There-

upon the complainant was duly appointed receiver of all its property and assets and took possession of the same.

It appears that one Laura A. Cobb became the registered owner and holder of certain shares of the capital stock of the bank and retained the same at the time of her death on April 11, 1904. In her last will and testament she appointed John P. Cobb, the defendant herein, and one Calvert Spensley, her executors, and directed them to invest the sum of $2,000 of her estate in interest-bearing securities, and to pay the income thereof to one Catherine Monohan during the life of the said Catherine Monohan, and upon the latter's decease to pay the same over to certain persons designated in the will.

The will was duly admitted to probate in the county court of Iowa county in the state of Wisconsin, and Cobb and Spensley qualified as executors. The executors, instead of investing $2,000 in interest-bearing securities, as directed by the testatrix, caused and procured the transfer and registry, upon the books of the bank, of 20 shares of the capital stock of the bank to themselves as trustees for Catherine Monohan, and they remained so registered at the time when the Comptroller took possession of the bank, and they so remain at the present time. The stock so transferred was stock which, at the time of the death of the testatrix and at the time of the transfer, stood on the books of the bank in the name of the testatrix.

In order to pay the debts, the Comptroller of the Currency found it necessary to make an assessment upon the shareholders for $100,000, and such an assessment was made on November 3, 1909, to be paid by the shareholders ratably on or before November 17, 1909, and demand was made upon each and every one of the shareholders for $100 upon each and every share of the capital stock of the bank held or owned by them, respectively, at the time the bank was found to be insolvent. The receiver was directed to take all necessary proceedings to enforce the individual liability of the shareholders.

The suit was commenced against the defendant Cobb upon the theory that the estate of Laura A. Cobb was liable upon this assessment upon the 20 shares of the stock which the executors had transferred to themselves as trustees. The receiver contends that the executors had no authority, either under the terms of the will or the statutes of Wisconsin, to invest trust funds in the stock of a national bank, and that the transfer of the stock from themselves as executors to themselves as trustees was wrongful and did not constitute Catherine Monohan the beneficial owner of the stock, and that therefore she could not be compelled to pay the assessment. It is alleged in the bill, and upon the demurrer must be taken as true:

"That said Catherine Monohan had no knowledge of the fact that the defendant Cobb and said Spensley had caused the transfer and registry upon the books of said association to themselves as trustees for said Catherine Monohan of said twenty (20) shares of the capital stock of said association as aforesaid."

The court was therefore asked to adjudge and decree that the transfer of the stock made by the executors to themselves as trustees was unauthorized and void, and ineffective to divest the estate of the de-

cedent Laura A. Cobb of the ownership of the stock; and that notwithstanding the transfer the stock still remained as the property of the estate of Laura A. Cobb at the time the bank was found by the Comptroller to be insolvent and at the time of the assessment upon the shareholders.

It appears that, prior to the time when the Comptroller found the bank was insolvent, Cobb and Spensley had filed their final account as executors on July 28, 1908, and had at that time made oath that the estate of Laura A. Cobb had been wholly distributed, with the exception of the shares of stock held by them and registered in their names as trustees, and that no other property or assets of Laura A. Cobb remained in the hands of said executors as such.

It further appears that this suit has been brought against John P. Cobb individually because of a provision contained in a statute of Wisconsin, which provides that where a claim against the estate of any deceased person remains contingent until after the time limited for filing claims has expired, and then subsequently becomes absolute, and the assets of the estate have been paid to the distributees as legatees or next of kin, an action will lie in favor of the claimant against such legatees or next of kin to recover the full value of such assets or sufficient thereof to satisfy such claim; and that actions against the next of kin or legatees of any deceased person to recover the value of any assets that may have been paid to them by any executor or administrator may be brought against all of said next of kin jointly, or one or more of them, or against all of said legatees jointly, or one or more of them. The statute provides that any such next of kin, against whom such recovery shall be had, may maintain an action against the other relatives of the decedent, to whom assets may have been paid, for a just and equal contribution in such an amount as shall be in the same proportion to the whole sum collected of the plaintiff as the value of the assets delivered to such defendant in such action bore to the value of all the assets delivered to all the relatives of the deceased.

The defendant Cobb was, as we have said, one of the executors of Laura A. Cobb, whose son he was, and was also one of the distributees under the will, and as such received from the executors more than $12,000.

The court below sustained the demurrer to the bill and filed the following memorandum:

"It may be that under the law of Wisconsin the executors of Mrs. Cobb were not authorized in investing trust funds in shares of a national bank, nor in assigning to a trust fund created by Mrs. Cobb's will any part of her property consisting of shares of a national bank. But the only persons injured by such infraction of Wisconsin law are the cestuis que trustent and (perhaps) the state of Wisconsin. It is no concern at all of this receiver, who owns those shares, as long as they were actually owned by the persons pretending to own them. On the face of the bill it is to me plain that they were actually owned by Cobb and another as executors, but the suit is not against the executors. On complainant's own theory, if the assignment of these shares to a trust fund was a nullity, then they remained undistributed assets, for which the executors are responsible as executors, so that in any event the bill shows no cause of action against Cobb individually. The demurrer is sustained, with costs, and leave to amend is not granted. Final judgment will be entered for defendant."

[1] The law is well settled in England that, in the absence of a statute authorizing it, trustees cannot invest trust funds in the stock of a bank or of any private corporation, unless the author of the trust had conferred such authority upon the trustee. The English rule has been adopted in some of the states of this country, as in Illinois, New York, and Pennsylvania. Penn. v. Fogler, 182 Ill. 76, 55 N. E. 192 (1899); King v. Talbot, 40 N Y. 76 (1869); Worrell's Appeal, 23 Pa. 44 (1854). In others, as in Massachusetts and Maryland, such investments are allowed when the corporations have acquired, by reason of the amount of their property and the prudent management of their affairs, such a reputation that cautious and intelligent persons commonly invest their own money in such stocks. Green v. Crapo, 181 Mass. 55, 62 N. E. 956 (1902); Brown v. French, 125 Mass. 410, 28 Am. Rep. 254 (1878); McCoy v. Horwitz, 62 Md. 183 (1884).

In Wisconsin the courts appear to have followed the English rule. In Simmons v. Oliver, 74 Wis. 633, 636, 637, 43 N. W. 561, 562 (1889), the court, after calling attention to the English rule that trustees can only invest the trust fund in real estate or government securities says:

"We prefer to adhere to the well-established rule in relation to the investment of trust funds, and if a change is to be made let the Legislature make it."

See, also, Pabst v. Goodrich, 133 Wis. 43, 76, 113 N. W. 398, 14 Ann. Cas. 824 (1907).

In 1903 the Legislature of Wisconsin passed an act specifying the securities in which such funds may be invested and modified the English rule to some extent. It authorized the investment of trust funds in the mortgage bonds or preferred stock of railroad corporations, subject to certain restrictions, but it conferred no authority to invest in the stock of banks. Laws of Wisconsin 1903, c. 317.

[2] It is true that a creator of a trust may direct how investments shall be made, and that he may authorize investments other than those which the rules and practice of the courts sanction. In this case the author of the trust gave authority to invest "interest-bearing securities." It cannot be claimed, however, that the stock of a national bank is an interest-bearing security. Shares of stock may be "securities," but certainly they are not "interest bearing."

[3] The fact that the trustees had no right, under the rules and practice of the courts of Wisconsin, to invest in the stock of a national bank did not prevent title to the stock vesting in them as trustees when it was transferred to them as trustees on the books of the bank. When an executor is also a legatee or distributee, no formal act is necessary to vest title to the legacy or distributive share in him as an individual. Any act on his part, showing an intention to retain assets in payment, is sufficient. So, if the person named as an executor in the will is also named as a trustee, the rule in England and in many of the states of this country seems to be that if, as executor, he clearly sets apart and appropriates a particular fund to himself as trustee, he holds that fund as trustee and not as executor. See Perry on Trusts (6th Ed.) vol. 1, § 263; Ruffin v. Harrison, 81 N. C. 208 (1879).

The legal difference between the two relations of executor and trus-

tee is clearly defined and quite important, although it is sometimes difficult to determine in a particular case whether an executor has ceased to hold a fund as executor and assumed the attitude of a trustee. In the case before us there seems to be no difficulty of that kind, as the shares of stock were taken from the assets of the estate and transferred on the books of the company by the executors to themselves as trustees. In doing this the executors treated the stock as a separate trust fund, and they held themselves out to the world as trustees of the fund for the cestui que trust, Catherine Monohan. The stock then ceased to be a part of the assets of the testatrix, and the executors ceased to hold as executors, and from that time on have held as trustees.

[4, 5] It cannot be assumed that the transfer of the stock was void and without effect. Under the common-law rule and, in the absence of any statute providing otherwise, an executor or administrator has the absolute power to sell or dispose of the personal assets of the estate as he sees fit, and can pass a good title to the property, and it is not necessary to have any order of court for the purpose. Munteith v. Rahn, 14 Wis. 210; In re Gay, 5 Mass. 419; Leitch v. Wells, 48 N. Y. 585. If an executor sells the stocks of the estate to himself in his individual capacity, he does something which he has no right to do, but it is something which he has a capacity to do, and if he does it title passes. The transaction is not void but only voidable at the option of those interested. Grim's Appeal, 105 Pa. 375; Tate v. Dalton, 41 N. C. 562. And the courts have held that if the executor, having acquired title in his individual capacity, subsequently sells it to a third party, the purchaser acquires an absolute title. Cannon v. Jenkins, 16 N. C. 422. In the same way it follows that if executors, having title to stocks belonging to the estate upon which they are administering, transfer those stocks to themselves as trustees upon the books of the corporation, the transfer is not void but only voidable. If in the particular jurisdiction the trustees are entitled to invest trust funds in such stocks as those transferred, the transfer is valid. But if such an investment is unauthorized the transfer of title is simply voidable; and until it has been set aside the title is in the trustees as such and not in the executors. The common-law rule has been changed by statute in some states in which the executor is required to obtain an order from the court before he can sell the assets. Where this is the law, and a transfer of the assets is made by an executor who has not obtained an order of court authorizing it, the transfer in such a case would be void rather than voidable. Our attention, however, has not been called to any statute in Wisconsin making an order of sale necessary in such cases, and we assume that the law of that state remains as it was at common law.

Not only did the executors transfer the stock to themselves as trustees, but as executors of the estate they filed their final account in a proper court in Wisconsin on July 28, 1908—more than a year before the bank failed—and made oath that said estate had been wholly distributed prior to that date, with the exception of the 20 shares of stock registered in their names as trustees for Catherine Monohan, and that no other property or assets of the estate remained in their hands.

[6] As the trustees for Catherine Monohan hold an improper invest-

ment in stocks for her, she had the right, when the nature of the investment was brought to her attention, to accept or reject it. If she accepted it, or had lost her right by laches or acquiescence to reject it, she would no doubt be liable under the statutes of the United States as a stockholder. Section 5152 of the Revised Statutes provides that:

"Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estate and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

If she rejected the investment or still has a right to reject it, about which no opinion is expressed, then it would seem that the trustees hold the stock in their individual right and would themselves be liable as such upon the stock.

If we understand the opinion of the court below, the shares of stock which the executors held as a part of the estate of Mrs. Cobb they continued to hold as executors, notwithstanding their transfer of the stock to themselves as trustees of Catherine Monohan. This conclusion is based on the theory that the transfer to themselves as trustees was a nullity, as trustees are not authorized in Wisconsin to invest trust funds in the stocks of a national bank. We have seen that such investments are unauthorized in Wisconsin, but it does not follow, as already stated, that the transfer of the stock by the executors to themselves as trustees was a void transaction. The trustees took the title; and so long as that transaction is permitted to stand, the estate in the hands of the executors is not liable to the receiver for any assessments made on the stock; and if the estate is not liable, then no legatee of the estate is liable under the provisions of the Wisconsin statute. We do not find it necessary to express any opinion concerning the liability of the defendant Cobb as a legatee of the estate under the Wisconsin statute in case the transaction is set aside. . At the time he received his share of the estate of the testatrix, the bank was apparently amply solvent and continued to be solvent for many months afterwards. Whether the title he then took can be affected by what happened afterwards is a question which does not need to be determined so long as the title stands in the trustees.

[7, 8] The court below was clearly correct in its conclusion that the bill in its present form could not be maintained. The question remains whether the court was right in refusing the complainant the privilege of amending his bill in such manner as would cure it of its defects. The allowance or refusal of amendments is a matter which is largely within the sound discretion of a trial court, and in the absence of a clear abuse thereof its action is not reviewable on appeal. We cannot say that the court grossly abused its discretion in refusing to allow the bill to be amended. The fact that we might have permitted the bill to be amended, if we had been in the trial court's place, would not justify us in interfering with the exercise of that court's discretion, unless we were satisfied that its discretion had been grossly abused.

The decree dismissing the bill and entering judgment for defendant is affirmed.