## JACKSON v. WESTERN UNION TELEGRAPH CO.

(Circuit Court of Appeals, Fifth Circuit. January 11, 1921.)

No. 3588.

1. **Telegraphs and telephones ⬤⇒53—Nondelivery of telegram, creating void contract, does not cause damage.**

Plaintiff was not damaged by nondelivery of a telegram sent him by a Texas corporation, accepting his offer to exchange land in Texas for property of the corporation, where, under the laws of Texas, the executory contract thereby created would have been wholly void.

2. **Corporations ⬤⇒435—Agreement to purchase land not needed in business, though with purpose of winding up affairs, held void.**

Under Rev. St. Tex. 1911, arts. 1164, 1175–1177, an agreement by a Texas corporation to exchange property owned by it for lands in Texas, which were not needed in any business it was authorized to transact, and were not taken in due course of business to secure the payment of a debt, would have been not merely ultra vires, but wholly void, though the exchange was for the purpose of winding up its affairs, paying debts, and distributing its assets.

In Error to the District Court of the United States for the Western District of Texas; Duval West, Judge.

Action by C. H. Jackson against the Western Union Telegraph Company. Judgment for defendant, and plaintiff brings error. Affirmed.

J. F. Carl, of San Antonio, Tex. (Carl, Swearingen & Clifton, of San Antonio, Tex., on the brief), for plaintiff in error.

C. A. Goeth, of San Antonio, Tex. (W. E. Spell, of Waco, Tex., Goeth, Webb & Goeth, of San Antonio, Tex., and Francis Raymond Stark, of New York City, on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was an action by the plaintiff in error, C. H. Jackson (herein referred to as the plaintiff), to recover damages for the alleged negligent failure of the defendant in error, Western Union Telegraph Company (herein referred to as the defendant), to deliver a telegram sent to the former on March 17, 1917, by an official of the Texas Cooking Oil Company, a Texas corporation, stating that corporation's acceptance of a proposition previously made to it by Jackson to trade its oil mill refinery, located at Burlington, Tex., for a tract of land in Gaines county, Tex., containing 13,284 acres, subject to an incumbrance thereon. The plaintiff had an op-. tion on the Gaines county land, which expired on the date mentioned. Under the proposition made by the plaintiff to the Texas Cooking Oil Company, the latter had to accept not later than that date. The plaintiff had a contract with one McGregor to sell to him the oil mill refinery property on such terms that the plaintiff would have made a net profit of $4,000, if he had got the Gaines county land under his option and had traded that land for the oil mill refinery property. It was claimed that the defendant's failure to deliver the telegram prevented the exercise by the plaintiff of his option on the Gaines

county land, and caused him to lose the profit he would have made by trading that land for the oil mill refinery property. The charter of the Texas Cooking Oil Company shows that the purpose for which that corporation was formed was:

"The erection and operation of a plant for the manufacture of all classes and grades of products to be made from cotton seed, more especially the manufacture and sale of cooking oil from cotton seed."

It was disclosed that the Gaines county land was suitable for grazing purposes only, that the acquisition and ownership of it was not necessary to enable the Texas Cooking Oil Company to do business in Texas, that said lands were not suited for the conduct of the business for which that company was incorporated, or a business which that corporation was lawfully authorized to transact, and that said lands were not being purchased by that company in due course of business to secure the payment of a debt. It was disclosed that the oil mill refinery property of that company was unprofitable, that that company had ceased to do business and owed debts, and that its acceptance, evidenced by the above-mentioned telegram, of plaintiff's proposition, was made, with the consent of all its shareholders, for the purpose of winding up its affairs, paying its debts, and distributing its assets among its shareholders in such a way as would be to their profit and advantage. The court ruled that the contract resulting from the Texas Cooking Oil Company's acceptance of the plaintiff's above-mentioned proposition to it was prohibited by the laws of Texas, was wholly unperformed, and was ultra vires, unlawful, and void, and the suit was dismissed.

[1, 2] It cannot well be said that the plaintiff would have been benefited by the prompt delivery of the telegram in question, if the contract resulting from the acceptance by the Cooking Oil Company of the proposition made to it by the plaintiff was an executory one, conferring on the plaintiff no legally enforceable right. The prompt delivery of the telegram would have served only to inform plaintiff that the Cooking Oil Company agreed to trade its oil mill refinery property for the Gaines county lands. That that agreement, made under the circumstances stated, created no legal obligation, we think is plainly shown by the following provisions of the statute law of Texas:

"No private corporation shall be permitted to purchase any land under the provisions of this chapter, unless the lands so purchased are necessary to enable such corporation to do business in this state, or except where such land is purchased in due course of business, to secure the payment of debt."

"All private corporations authorized by the laws of Texas, * * * as mentioned in the preceding articles, which have, heretofore, * * * acquired by lease, purchase or otherwise more land than is necessary to enable them to carry on their business, shall, within fifteen years from the time this law takes effect, * * * sell and convey in fee simple all lands so acquired, and which are not necessary for the transaction of their business."

"No private corporation heretofore or hereafter chartered or created whose main purpose of business is the acquisition or ownership of land by purchase, lease or otherwise shall hereafter be permitted to acquire any land within this state by purchase, lease or otherwise."

"No corporation, domestic or foreign, doing business in this state, shall

employ or use its stock, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation or those permitted by law."

Revised Civil Statutes of Texas 1911, §§ 1175, 1176, 1177, and 1164.

The agreement was an executory one of a private corporation to purchase lands not necessary to enable it to do business in Texas, and it was not one for the purchase of land in due course of business, to secure the payment of debt. It was one to do a thing prohibited by the above set out statute law. The stated exceptions to the explicit prohibition do not include a purchase of land by a corporation for the purpose of winding up its affairs, paying debts, and distributing its assets among its shareholders. The timely receipt of the telegram by the plaintiff could not have had the effect of making the oil mill refinery property subject to the plaintiff's control, so as to enable him to realize a profit on a resale of it. The contract was not merely ultra vires in the proper sense; that is to say, outside the object of the corporation's creation as defined in the law of its organization, but was explicitly prohibited by statute. Such a contract is not voidable only, but is wholly void, and of no legal effect. Central Transportation Co. v. Pullman Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; Jacksonville v. Hooper, 160 U. S. 514, 16 Sup. Ct. 379, 40 L. Ed. 515; McCormick v. Market Nat. Bank, 165 U. S. 538, 17 Sup. Ct. 433, 41 L. Ed. 817; California National Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198. The purpose of the telegram was to obligate the sender to do a thing prohibited by the law of Texas. The sending of it was a step towards bringing about a forbidden result. The plaintiff could not have been damaged by a failure to get notice of the making of a promise which created no obligation and was without any legal effect. His position was not changed for the worse by the defendant's negligent failure to deliver. The timely delivery of the telegram would not have improved the plaintiff's position with respect to contemplated trades based upon the oil mill refinery property being subject to his disposition. He was equally without any enforceable right in or to that property, whether the proposition he had submitted was accepted or rejected. The conclusion is that the plaintiff acquired no right as a result of the nondelivery of the telegram evidencing the Texas Cooking Oil Company's undertaking to do a thing prohibited by the law under which it existed. It follows that the court did not err in ruling as above stated.

The judgment is affirmed.