[No. 3071. March 16, 1926.]

MADDISON v. BRYAN et al.

[Rehearing Denied May 28, 1926.]

[247 Pac. 275.]

### SYLLABUS BY THE COURT

1. In suit by receiver of failed bank to enforce statutory stockholders' liability, complaint need not allege insolvency of bank.

2. Statutory liability of stockholders of failed banks is an asset in the hands of the receiver, who may enforce

---

same, in course of liquidation, without awaiting final determination of fact or amount of deficiency of assets.

3. Order assessing stockholders' liability and directing receiver to enforce same, made in proceedings to wind up failed bank, is proper exercise of court's control over its receiver, and is conclusive on stockholders, though not parties, as to necessity of assessment.

4. Liability attaches under section 8, c. 149, Laws 1923, to beneficial and equitable owners of stock in failed bank.

5. Contract by which stockholders of a national bank acquire ownership of all stock of state bank, proportionate to their holdings in the former, and disqualify themselves from transferring their interests in the latter except by transfer of their stock in the former, is not void, even though its purpose and effect are to give the national bank control over affairs of the state bank.

6. A demurrer to a complaint, on the ground that it does not state facts sufficient to constitute a cause of action, does not raise a question merely as to the amount of judgment.

## On Motion for Rehearing.

7. That allegations are incomplete, indefinite, or conclusions of law or fact, not sufficient to sustain a demurrer to the complaint for failure to state a cause of action, following Michlet v. Cole, 20 N. M. 357, 149 Pac. 310.

8. In suit by receiver of failed bank to enforce statutory liability against equitable owners of stock, trustees who are the registered holders are not necessary parties.

Appeal from District Court, Bernalillo County; Hickey, Judge.

Action by Thomas K. D. Maddison, receiver of the State Trust & Savings Bank of Albuquerque, against Susie P. Bryan and others. Some defendants suffered judgment by default. From judgments rendered for the plaintiff against all defendants severally, some defendants appeal, and some defendants against whom judgment went by default also appeal. Affirmed and remanded, with directions.

F. E. Wood, R. P. Barnes, A. A. Sedillo, and E. W. Dobson, all of Albuquerque, for appellants.

Merritt C. Mechem and F. W. Vellacott, both of Albuquerque, for appellee.

## OPINION OF THE COURT

WATSON, J.   This action is one for the enforcement of the statutory additional liability of the stockholders of the failed State Trust & Savings Bank of Albuquerque.   There   were   numerous   defendants, against all of whom, severally, judgments were rendered.   Some of the defendants demurred to the complaint and are here complaining of the overruling of their demurrers.   The remainder of the defendants made no appearance, but suffered judgment by default.   A few of this latter class have appealed from the judgments, urging here that the complaint is so fundamentally defective as not to support the judgments.

The complaint alleges, in substance, that the plaintiff, was on April 5, 1924, appointed by the district judge as receiver of the State Trust & Savings Bank (formerly American Trust & Savings Bank) in certain proceedings in which the state was plaintiff and said bank was defendant; that the bank was incorporated in 1912 with a capital stock of 500 shares of the par value of $100 each; that in June, 1915, the stockholders of the State Bank were also stockholders of the National Bank of Albuquerque, and that at that time a trust agreement was entered into, pursuant to which the stockholders of the State Bank transferred and delivered to five trustees all of the capital stock, to be held by said trustees in trust for the owners and holders of the shares of capital stock of said National Bank in proportion to their ownership of such stock; that said trust agreement was carried into effect by the transfer of the stock of the State Bank to the trustees, and by issue to the stockholders of certificates of stock of the National Bank bearing upon the reverse an indorsement to the effect that the owner of the shares represented by such certificate was beneficially interested, by and under the trust agreement, in the capital stock of the State Bank in proportion to his ownership of stock in the National Bank, which beneficial interest should not be sold or transfered otherwise than by transfer of the stock in the Na-

tional Bank, and that such beneficial interest should
pass by such transfer.   The complaint further alleged
that the present holders of stock in said National
Bank all hold certificates upon which such indorse-
ment appears, evidencing their ownership of shares
of the capital stock of said State Bank.   It was fur-
further alleged that in September, 1915, the State Bank,
by amendment of its articles of incorporation, in-
creased its capital stock to $100,000 and that the 500
shares thus created were issued to five trustees, so
that each of them hold 200 shares, and that they hold
the same for the use and benefit of the stockholders
of the National Bank, in proportion to their holdings
in said National Bank; namely, one share of the capital
stock of the State Bank to two shares of the stock
of the National Bank.   The complaint then sets forth
an order of the district court in the receivership
proceedings, declaring the liability of the stockholders
of the State Bank for an assessment of 100 per cent.
on the par. value of their stock, and directing the re-
ceiver to enforce such liability by suit or otherwise,
and alleges that the defendants, naming them, are the
beneficial and equitable owners, respectively, of desig-
nated numbers of shares of stock of the State Trust
& Savings Bank, as shown by the stock books of the
State National Bank.

The trust agreement, above mentioned, is annexed
to the complaint and made a part thereof as an ex-
hibit.   We shall not attempt to summarize it here, but
will refer to its provisions in discussing the several
points raised.

[1]   Some of the appellants urged that the com-
plaint is fatally defective, in that it fails to allege the
insolvency of the bank.   The statutory provision for
the additional liability of stockholders of state banks
is found in section 8, c. 149, Laws of 1923, amending
section 40 of the Banking Code of this state (chapter
67, Laws of 1915).   That section is as follows:

"Sec. 8.   That sec. 40, chapter 67, of the Session Laws
of 1915, be and the same is, hereby amended to read as
follows:

Maddison v. Bryan et al., 31 N. M. 404

" 'The stockholders of every banking corporation shall be held individually responsible for all contracts, debts and engagements of such corporation, each to the amount of his stock therein, at the par value thereof, in addition to the amount invested in such stock. The stockholders in any banking corporation who shall have transferred their shares or registered the transfer thereof within six months next before the date of the failure of such corporation to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability, but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure.' "

Section 86 of chapter 67, Laws of 1915, provides as follows:

"No bank shall make an assignment for the benefit of creditors. No writ of attachment or execution shall be levied upon the property or assets of any bank when in the possession of the state bank examiner, special deputy bank examiner or receiver appointed by the court. No creditors shall maintain any action to recover upon a stockholder's or officer's or director's liability while a bank is in the possession of the receiver, but such stockholder's, officer's and director's liability shall be deemed an asset of said insolvent bank and such receiver shall have the sole and exclusive right to maintain such action."

It might be inferred from the former section that the additional liability is to arise upon "failure of such corporation to meet its obligations." It might be inferred from the latter section that the liability only arises in case of insolvency of the bank. It is argued that, since the complaint does not allege the insolvency of the bank, it fails to exclude the theory that it is being wound up because of the expiration of its charter, or for violation of it. The receiver is appointed in a proceeding instituted by the Attorney General, upon full and complete report by the state bank examiner, after a thorough examination of the affairs of the bank, from which he shall become satisfied that such bank cannot resume business or liquidate its indebtedness to the satisfaction of all of its creditors. Section 32 c. 120, Laws of 1919. It is this condition of the bank that warrants a receivership, and it is this condition, we think, that is meant

by the terms "insolvent bank" as used in section 86, supra.

There would seem to be no basis for the claim that the bank's insolvency must be alleged. If anything were necessary to be pleaded in addition to' the appointment of the receiver, it would be the several steps above mentioned, showing of which is required to authorize the appointment. But the judgment appointing the receiver is conclusive that the necessary steps were taken and the statutory conditions existed. It is rendered in proceedings "governed by the provisions of the general incorporation laws for the winding up of insolvent incorporations." Section 32, c. 120, Laws 1919. That judgment is binding on the stockholders, even though they are not parties. The corporation in that proceeding stands for and represents the stockholders· Mirabal v. Albuquerque Wool Scouring Mills, 170 P. 50, 23 N. M. 534; Jones v. Page, 190 P. 541, 26 N. M. 440. The stockholders being bound by a former judgment, and being precluded in a collateral proceeding from going back of it to question the facts upon which it was based, it would seem unnecessary to plead such facts.

[2] It is further objected that the complaint does not show that there were any debts or obligations of the bank remaining unpaid, nor that the assets of the bank, in the hands of the receiver, are insufficient to pay them, nor that all of the assets have been reduced to cash and applied to their extinguishment, leaving an unpaid balance. These objections are all based upon the doctrine approved by this court in Clapp v. Smith, 159 P. 523, 22 N. M. 153. It was there held that the statutory additional liability was not an asset of the bank, going as such into the hands of the receiver. It was said to be a secondary liability, to be enforced only by the creditors after a deficiency of assets had been determined. Since then the statute has provided otherwise. Section 86, c. 67, Laws of 1915. It is now an asset of a bank, in the hands of a receiver, who has the exclusive right to.

realize upon it. The statute does not fix any time for, nor preliminary requirements to, the commencement of suit. It is the duty of the receiver to collect the assets. It is not his duty to await the tedious and endless process of determining, finally, the fact and amount of the deficiency. Pate v. Bank of Newton, 77 So. 601, 116 Miss, 666; Lynch v. Jacobsen, 184 P. 929, 55 Utah, 129; Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476. When all claims of creditors have been satisfied, the receiver is to make his final accounting, and any surplus assets are to be returned to the stockholders, who may then adjust any equities and rights among themselves. Section 33, c. 120, Laws of 1919.

[3] The complaint sets forth an order of the court in which the receivership proceedings are pending, declaring an assessment of 100 per cent. of its additional liability. Whether such order is necessary we need not consider. The banking code does not require it. It is perhaps required, and certainly appropriate, because of the general directing control which a court of equity exercises over its receiver. Such an order is deemed conclusive of the necessity of resorting to the additional liability. Lynch v. Jacobsen, supra; 7 Fletcher Enc. Corp. § 4237; Chavous v. Gornto (Fla.) 102 So. 754.

If in fact there were no outstanding debts, or all debts had been satisfied, the liquidation would be complete, and there would be nothing further for the receiver to do except to account, which, of course, he could be compelled to do.

It is also objected that the complaint fails to allege that any creditors of the bank became such after certain of the defendants acquired their stock. This point is not argued, and so we do not consider it.

[4] It is contended by some of the appellants that the statute imposes liability only on the legal holders of the stock, and that, as the complaint affirmatively shows that all of the stock was held by the five trustee, no recovery could be had against others. It

is argued that originally, under section 40, c. 67, Laws
of 1915, the equitable as well as the legal owners were
liable. The amendment (section 8, c. 149, Laws of
1923), ommitted the express provision for the liability
of equitable owners. Jones v. Rankin, 140 P. 1120,
19 N. M. 56, is cited to the point that the statute must
be strictly construed in favor of the stockholder. Since
the Legislature has removed from the statute an ex-
press provision that equitable owners are to be liable,
and since the statute is to be strictly construed, it is
said that there can be no doubt that none but legal
owners are liable. Ordinarily this argument would
doubtless be sound. We are constrained, however, by
other considerations to reach a different conclusion.

The first clause of section 40 c. 67, Laws of 1915,
was substantially the same as the first clause of U. S.
Rev. St. § 5151. The remainder of section 40 defined
the word "stockholder" to include both legal and
equitable owners· The remainder of R. S. § 5151,
has no application here. R. S. § 5151, was super-
seded in 1913 by section 23 of the Federal
Reserve Act (U. S. Comp. St. § 9689). Section 40,
although in form amended, was really superseded by·
section 8, c. 149, Laws of 1923, the latter being the
same as section 23 of the Federal Reserve Act. We
are cited to no judicial construction of the federal
statute in its present form. Under R. S. § 5151, it is
well established that the liability extended to the bene-
ficial or equitable owners of the stock. Ohio Valley
National Bank v· Hulitt, 27 S. Ct. 179, 204 U. S. 162,
51 L. Ed. 423. There is nothing in section 23 of the
Federal Reserve Act to indicate an intention to aban-
don the former rule of liability as laid down in that
case, and we assume that no change in that respect
was contemplated or effected. Under the federal rule,
the definition of "stockholder" in our section 40 was
unnecessary. Without it, the statute would have
been construed the same as with it. It was merely
declaratory of the federal rule. It was omitted in
1923, not with any intent to change the rule of liabil-
ity, but to conform to the language of the federal

statute. Being satisfied of the legislative intent, we
need not consult canons of construction. To do so
would be to use them to pervert rather than to ascer-
tain the legislative will.

[5] It is vigorously urged that the trust agree-
ment is void because it is "a veiled but perfected
attempt by a national bank and ultra vires of the Na-
tional Bank to own, hold, and control the capital
stock of another bank." Appellants point to the call
for the meeting of stockholders of the State Bank to
consider and act upon the proposition of the National
Bank for a consolidation of the two banks; the Na-
tional Bank to purchase the State Bank by paying
one share of National Bank stock for two shares of
State Bank stock. They point to provisions in the
contract to the effect that the National Bank is to
declare a dividend of $62,500, which is to be used to
acquire the 500 shares of State Bank stock at $125 a
share. The stockholders of the State Bank, on sur-
rendering their stock to the trustees, and also surren-
dering their stock in the National Bank, were to re-
ceive in exchange therefor certificates representing
their ownership of stock in the National Bank, with
an indorsement on the back referring to the trust agree-
ment, and reciting that the indorsement represents a
beneficial pro rata ownership in the stock of the State
Bank, which ownership passes with, and only with, the
transfer of the certificate. The agreement recites that
the transaction will be for the interest of the stock-
holders of the National Bank (who were also the
stockholders of the State Bank), as it would enable
said National Bank to transact for its patrons certain
branches of business usually, or often, transacted by
banking institutions, but not clearly included within
the corporate powers of a national bank; and to that
end it was agreed that the trustees named in the agree-
ment should hold their offices at the pleasure of the
board of directors of the National Bank, and that
said board might appoint successors to said trustees.
The dividends declared by the State Bank were to be
paid to the National Bank, for immediate distribu-

tion, however, by it among those beneficially interested. If any of the stockholders of the State Bank should refuse to sign the trust agreement, the trustees were authorized to purchase their stock and hold it for the benefit pro rata of those who had signed; they agreeing to contribute proportionately the sums necessary for such purpose. It was provided that no person should be entitled to share in the distribution of dividends of the State Bank except upon production of a certificate of stock in the National Bank, with indorsement showing his beneficial ownership of stock in the State Bank. This agreement was signed by the five trustees as parties of the first part and by owners of 417 of the 500 shares of the State Bank as parties of the second part.

These provisions of the trust agreement are quite persuasive of the purpose to weld together the interests of the two institutions and to place the National Bank in a position to exercise complete control of the State Bank. The National Bank did not, however, become a contracting party nor agree to anything. It was never the owner of a share of the stock of the State Bank, and never had any of its assets invested therein. While it no doubt,. through its management, promoted the deal and deemed itself benefitted thereby, it was the stockholders of the two institutions who were the contracting parties. They acted as individuals, presumably in their own interest.

If the virtual and practical control of the State Bank by the National Bank, through the arrangement represented in the trust agreement, were the decisive question, it would be a serious one. But is it decisive? Appellants contend that it is not within the powers of a national bank to acquire ownership of the stock of other corporations, and that if it does so the transaction is void, and the bank is not estopped to plead ultra vires if sued upon the statutory additional liability. To these propositions they cite 1 Cook on Corps. (6th Ed.) § 315; First National Bank of Concord v. Hawkins, 19 S. Ct. 739, 174 U.

S. 364, 43 L. Ed. 1007.; Cal. Nat. Bank, v. Kennedy, 17 S. Ct. 831, 167 U. S. 362, 42 L. Ed. 198; First Nat. Bank of Charlotte v. Nat. Exc. Bank of Baltimore, 92 U. S. 122, 23 L. Ed. 679; Second Nat. Bank of Parkersburg v. U. S. F. & G. Co. ( C. C. A.) 266 F. 489; Morris v. Third Nat. Bank of Springfield, 142 F. 25, 73 C. C. A. 211; Jackson v. W. U. Tel. Co. (C. C. A.) 269 F. 598; Shaw v. Nat. Ger. Am. Bank, 132 F. 658, 65 C. C. A. 620; 3 Fletcher Enc. Corp. p. 2606.

The correctness of these propositions is not challenged by the appellee. His answer is that the State National Bank made no purchase of the stock of the State Trust & Savings, Bank and that no attempt is being made to hold it to any liability. This answer seems to be sufficient. The decisions cited absolved banks from liability, because they had no power to make the contract from which the liability was claimed to arise. The individual stockholders are under no such disability. If the decisions had been on grounds of public policy, on the theory that one banking corporation should have no connection with or control over another, it might do to argue that the unlawful purpose could not be indirectly accomplished through the action of the stockholders. No such contention is here made. That the bank had no power to subscribe for stock of another bank is no ground for claiming that its stockholders individually had no such power. In one of the cases cited in the note to 1.Cook on Corporations, section 315, quoted by appellants, it was held that—

"Where a bank desires to subscirbe to the stock of a trust company but cannot legally do so, and its directors give their note in payment, they are liable on the note to the receiver of the trust company." Adams v. Kennedy et al., 34 A. 659, 175 Pa. 160.

Appellants assume that the trustees were in fact the representatives of the National Bank. There seems to be nothing in the complaint or the trust agreement to warrant this view. It could be based only on the provision that they were to hold at the

pleasure of, and their successors should be appointed by, the board of directors of the National Bank. They undertook, however, by the agreement, no duty to the bank. Their whole obligation is to the stockholders, for whom they expressly acknowledge themselves as trustees with respect to the title to the shares. The assumed fact not being true, we need not consider any legal consequences which might result if it were true.

Appellants next contend that, even if the trust agreement is not void, it cannot affect the rights of those who did not sign it, nor impose liabilities upon them. Their argument is that the liability of a stockholder for assessments is contractual; that the agreement, as incorporated by reference in the complaint, appears to have been signed by the holders of 417 only of the 500 shares of the then outstanding stock; that, while the complaint is sufficient (if the trust agreement is valid) to bring home liability to those who signed the agreement, it is insufficient as to defendants not signing.

A fair interpretation of the allegations of the complaint leads to the conclusion that all of the original 500 shares were delivered to and reissued to the trustees, and that the beneficial ownership thereof was thereafter represented by indorsement upon the reverse of certificates of stock in the National Bank. This appellants concede. The 83 shares the owners of which did not sign the agreement must have been acquired either by voluntary surrender or by purchase. Those who voluntarily surrendered their shares and at the same time surrendered their certificates in the National Bank, receiving in exchange new certificates of the National Bank stock with the indorsement defining, by express reference to the trust agreement, their beneficial interest in the State Bank, clearly, and upon well-established principles, were bound contractually to the same extent as if they had signed. If there were any shares acquired by purchase by the trustees, under the provisions of the contract, they were held by the trustees for the pro rata benefit of

those who had signed or ratified the agreement. The owners of such shares, having parted with their interest, drop out of the case. Thus, liability as of that time is traced to the holders of certificates of stock in the National Bank so indorsed. The beneficial interest clearly followed any transfers of this stock, and the liability just as clearly. So, when it is alleged that the defendants named hold and own National Bank certificates, all of which certificates bear the indorsement, and the amount of their respective holdings is stated, liability is brought home to them on account of their pro rata beneficial interest in the stock of the State Bank.

[6] Objection is finally made by appellants that the complaint and judgments are not confined to the liability on account of the original stock involved in the trust agreement. After the trust agreement had been carried into execution, as they assume, the articles of incorporaticn were amended, the capital stock incre sed by an additional 500 shares, and these shares issued to the trustees. They contend that, as to the increase, the allegations of the complaint do not constitute a cause of action. They urge that it is not shown that any of appellants authorized the increase, paid in any of the new capital. or even knew of the increase. Hence, they say, there are no allegations affecting them with a contractual liability, except mere conclusions of law, not admitted by the demurrer. The demurrer specifies many respects in which the complaint fails to state a cause of action. The objection here urged is not among the specifications. Whether this would of itself preclude appellants from raising the question here for the first time we do not decide, because another consideration is controlling. As we have concluded, the complaint states a cause of action against the defendants, including the appellants, to the extent of a total liability of $50,000, to be borne pro rata. The allegation of the increase of capital stock, if stricken, would still leave a cause of action. Considered, it does not negative nor nullify the cause of

action stated. If the complaint states a cause of action, the demurrer was properly overruled.

The objection here considered goes only to the amount of the judgment, to which no exception was taken. If a complaint is so fundamentally defective that it will not support a judgment, it may be attacked for the first time in this court. It seems apparent that the present objection was not in the minds of counsel when the cause was heard in the court below on their demurrer, nor when judgment was rendered. They then chose to stand upon the objections specified in their demurrer rather than to answer. Compelled to overrule their specified objections, we cannot of course reverse a judgment supported by a complaint which states a cause of action, because perchance, under a state of facts not pleaded, the judgments are excessive.

Being of the opinion that there was no error in overruling the demurrer, we affirm the judgments. The cause will be remanded, with direction to enter judgment against appellants and the sureties on their supersedeas bonds·

PARKER, C. J., and BICKLEY, J., concur.

On Motion for Rehearing.

WATSON, J. All appellants have submitted motions for rehearing. Appellants Rice et al., by their counsel, state the ground:

"That the court misapprehended and overlooked the condition of the federal statutes and decisions and the construction of the same by the federal courts, which it held in the opinion rendered to govern the construction of our statute."

The point urged is, not that we were wrong in holding that, in abandoning Laws 1915, c. 67, § 40, and adopting section 23 of the Federal Reserve Act (U. S. Comp. St., § 9689), we adopted with it the federal construction of it, but that we misconceived the true federal rule. Attention is now directed to R. S. U. S. § 5152 (U· S. Comp. St. § 9690), which, it is con-

tended, would be controlling in a case such as this, involving the liability of shareholders of a national banking association. For convenience, we reproduce Revised Statutes, §§ 5151 and 5152, and section 23 of the Federal Reserve Act, which supersedes the former:

"Sec. 5151. The shareholders of every national banking association shall be held individuallly responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares, except that shareholders of any banking association now existing under state laws, having not less than five millions of dollars of capital actually paid in, and a surplus of twenty per centum on hand, both to be determined by the Comptroller of the Currency, shall be liable only to the amount invested in their shares; and such surplus of twenty per centum shall be kept undiminished, and be in addition to the surplus provided for in this title; and if at any time there is a deficiency in such surplus of twenty per centum, such association shall be held individually responsible for all contracts, debts and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same exten that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure."

In the original opinion we said:

"Under R. S. § 5151, it is well established that the liability extended to the beneficial or equitable owners of the stock"—citing Ohio Valley National Bank v. Hulitt, 204 U. S. 162, 27 S. Ct. 179, 51 L. Ed. 423.

It is urged that the Hulitt Case did not so hold; that the effect of Anderson v. Philadelphia Warehouse Co., 111 U. S. 479, 4 S. Ct. 525, 28 L. Ed. 478, and Fowler v. Gowing (C. C.) 152 F. 801 (affirmed 165 F. 891, 91 C. C. A. 569), is the contrary; that under R. S. § 5152, where shares are held in trust, neither the trustee nor the cestui que trust is personally liable, the only liability attaching to the trust estate; and that it is imma-

terial that the trust estate consists entirely of the shares rendered worthless by the failure of the bank. Referring to the sections in question, it is apparent that the language of R. S. § 5152, does not exclude liability of the cestui que trust. It does exclude personal liability of the trustee and include liability of hte trust estate.

Considering counsel's proposition, it is plain that, if it is correct, any shareholder may place his stock in trust, being careful to mingle no other property with it, and rest in the assurance that neither he nor his trustee will ever be liable for an assessment. We do not attribute to Congress the intent to provide any such easy mode of escape from the liability imposed for the benefit of the creditors of national banking associations.

Considering now the decisions: It is urged that the Hulitt Case did not decide, and that it has never been decided or intimated in the federal courts, "that the equitable or beneficial owner, as those terms are ordinarily, or correctly used, was liable under the statute," but merely holds "that the bank was the **actual** and **real owner** of the stock, and cannot escape liability as such by putting title in the name of an irresponsible figurehead." It is said that no question of trusteeship, or of equitable or beneficial ownership, was involved. Scrutinizing the language employed in the Hulitt Case, it appears that the court, instead of using the word "equitable" in describing the ownership of the defendant, used the words "real" and "beneficial." They referred to Otjen, in whose name the stock stood upon the books of the insolvent bank, as the registered owner.

The facts were, however, that the defendant bank originally obtained possession of the shares, indorsed in blank, as a pledge, and thereafter, under the terms of the pledge, applied the value of the stock upon the indebtedness. Instead of having this stock transferred to its own name, it put it in the name of Otjen, an employee. No consideration passed from him, nor was

any expected. His agreement was to hold it for the bank, and to turn over to the bank all proceeds. While the bank was aptly termed the "real" and "beneficial" owner, and Otjen considered the registered owner, the terms "trustee" and "cestui que trust" might as aptly have been used. We find nothing lacking in the facts in the case to constitute Otjen trustee of the legal title to the stock, and to constitute the stock a trust estate. R. S. § 5152, was not discussed, but, if counsel's theory is correct, it would have been applicable in the Hulitt Case.

Anderson v. Philadelphia Warehouse Co., supra, relied upon by appellants, was distinguished in the Hulitt Case, and does not sustain appellant's contention. In that case the cestui que trust was held not liable—not because of the operation of R. S. § 5152, but because it was not an owner at all. It was a mere pledgee.

In Fowler ιν. Gowing, supra, relied upon by appellants, the question was not whether the cestui que trust could be held liable. It was merely held that the trustee could not be held personally liable under the facts in that case. Considering only the personal liability of the trustee, the court did remark:

"The fact that the trust estate was wiped out of existence, so far as value or financial responsibility is concerned, by the failure of the bank, is no reason or justification for looking to the trustee personally. The opinion of Judge Coxe, in Lucas v. Coe (C. C.) 86 F. 972, is quite clear and emphatic on that proposition.'

The cited case also involved merely the liability of the trustee personally. The question is quite different when the liability of the cestui que trust is involved.

We have found no case sustaining counsel's position, except, perhaps, Clark v. Ogilvie, 111 Ky. 181, 63 S. W. 429. There it was said that under R. S. § 5152, "it is the estate, and not the person, that is made liable for assessment." The question is not discussed, no authorities are referred to, and there are other grounds in the case to sustain the decision.

R. S. § 5152, was invoked in Hubbell v. Houghton

(C. C.) 86 F. 547 (affirmed 91 F. 453, 33 C. C. A. 574). In that case the registered owner had delivered the shares, indorsed in blank, to the real owner, so that the latter might at any time have effected the transfer of record. Under those facts, it was held that there was no trust. The registered owner had completed his duty. The court then made this observation:

"Moreover, if we were compelled to consider the proposition, we should probably hold that the statute, so far as it relates to the status of stock held in trust, concerns only express and active trusts, where there is a probability of some estate to respond to the liability, and also that it does not apply when the records of the corporation show an unincumbered title in the alleged trustee, as is the fact at bar."

In Davis v. Stevens, 7 Fed. Cas. 177, the contention was made that only the registered shareholders are liable. Although the holding would seem to have been in trust, as between the record and real owners, and although the court noticed R. S. § 5152, it was still held (opinion by Chief Justice Waite) that the real owner was liable.

In Parker v. Robinson, 71 F. 256, 18 C. C. A. 36, liability was sought to be imposed upon an executor who had accepted shares standing in the name of his testator by including them in his inventory. The court said:

"Under the circumstances, the defendant below became in law the owner of the stock, although he held it in his capacity as executor, and was holden to account for it as such. He thus became a shareholder, and liable, as such, under section 5151 of the Revised Statutes. * * * The provisions of section 5152, relating to stock held by executors, administrators, guardians, or trustees, are purely supplementary, and are intended only to relieve the classes of persons named therein from execution against their individual assets, and they do not qualify the general rule of liability under section 5151."

This view was again stated in Hampton v. Foster (C. C.) 127 F. 468.

In Williams v. Cobb, 219 F. 663, 134 C. C. A. 217 (affirmed 242 U. S. 307, 37 S. Ct. 115, 61 L. Ed. 325), appears a statement directly at variance with counsel's contention, though perhaps not to be considered a de-

cision of the point.   In that case it was sought to en-
force an assessment against the defendant individually
upon the theory that, as trustee, he had made an un-
authorized investment in the stock, and that therefore
the cestui que trust had the right to disavow the trans-
action, leaving the trustee the owner thereof.   The
court held that the investment was not a void trans-
action, but merely voidable, and that so long as the
cestui que trust had not taken advantage of her right
to repudiate, and it had not been set aside, the defend-
ant could not be held individually liable for the assess-
ment.   The court said:

"As the trustees for Catherine Monohan hold an im-
proper investment in stocks for her, she had the right,
when the nature of the investment was brought to her
attention, to accept or reject it.    If she accepted it, or
had lost her right by laches or acquiescence to reject it,
she would no doubt be liable under the statutes of the
United States as a stockholder.    Section 5152 of the Re-
vised Statutes provides that," etc.

We do not find counsel's contention supported by
the authorities.   The question does not seem to have
been decided in the federal courts, but such expressions
as we have found are opposed to such contention.   If
this were a case concerning shareholders of a national
banking association, we do not think that R. S. § 5152,
would be considered involved.   As stated in cases cited
supra, R. S. § 5152, is deemed supplementary to the
provisions of R. S. § 5151, and not as qualifying the
general rule of liability established by the latter sec-
tion.   As stated in Ohio Valley National Bank v. Hulitt,
supra, the courts have considered, under varying con-
ditions, what constitutes a shareholder under R. S. §
5151.   We do not think that R. S. § 5152, touches the
liability of a cestui que trust.   That is to be determined
under the general principles established under R. S. §
5151.   Those principles are stated in Pauly v. State
Loan & Trust Co., 165 U. S. 606, 17 S. Ct. 465, 41 L. Ed.
844, and quoted with approval in Ohio Valley National
Bank v Hulitt, supra, as follows:

"The object of the statute is not to be defeated by the
mere forms of transactions between shareholders and their

creditors.   The courts will look at the relations of parties
as they actually are, or as, by reason of their conduct,
they   must   be   assumed   to   be,   for   the   protection   of
creditors.    Congress did   not   say   that   those   only   should
be   regarded   as   shareholders,   liable   for   the   contracts,
debts, and engagements of the banking association, whose
names appear on the stock list distinctly as shareholders.
A   mistake   or   error   in   keeping   the   official   list   of   share-
holders   would   not   prevent   creditors   from   holding   liable
all who were, in fact, the real owners of the stock, and
as such had invested money in the shares of the associa-
tion.   As already indicated, those may be treated as share-
holders, within the meaning of section 5151, who are the
real owners of the stock, or who hold themselves out, or
allow themselves to be held out, as owners in such way
and under such circumstances as, upon principles of fair
dealing, will estop them, as against creditors, from claim-
ing that they were not, in fact, owners."

It occurs to us that there may be some significance
in the words "if living and competent to act and hold
stock in his own name," found in R. S. § 5152   Even
if the section were deemed to exclude, by implication,
the personal liability of a cestui que trust, it may be
questioned whether the exclusion would apply to such
a trust as this.   Do not the words quoted indicate a
limit to the purview of the section?   Did not Congress
contemplate beneficiaries incompetent to act for them-
selves, and to bind themselves by the contract arising
out of the purchase or acceptance of shares, ownership
of which involves statutory liability, rather than those,
sui juris, who, for their own purposes, seek to create
a trust for themselves?

Upon these considerations we conclude that we did
not misapprehend the decisions of the United States
Supreme Court as to the meaning of "shareholder,"
and that the proposition now being urged, namely, that
under our statute liability rests only upon the legal
owners of stock, was properly overruled in the original
decision.

The other appellants, in their motion, adopt the
ground and the contention which we have just disposed
of, and state five additional grounds.

Their third ground is that we erred in ruling, in ef-
fect, that the point that a complaint fails to state a

cause of action may not be raised for the first time in this court. We did not intend so to hold. Indeed, we said that a complaint so fundamentally defective as not to support judgment might be attacked here for the first time. Their second and fourth grounds are to the effect that we erred in refusing to consider as several the joint demurrer of the defendants, and in holding that if the complaint stated a cause of action as to one defendant, the demurrer was properly overruled. We did not so hold.

The argument in support of the second, third, and fourth grounds is based upon a misapprehension of the theory of the opinion. Counsel assume that the complaint seeks recovery from two classes of stockholders: First, those who hold shares of the original capital; and, second, those holding shares of the increased capital. They assume, then, that we held that, because the complaint stated a cause of action as to the former, the demurrer was properly overruled, even though no cause of action was stated as to the latter. Such was not our view. We considered that a fair interpretation of the complaint does not lead to the conclusion that there are two such classes of stockholders, but rather that each defendant holds stock both of the original issue and of the increase. Upon this theory we held that, as the complaint stated a cause of action against each defendant as to a part of the demand, the demurrer was properly overruled.

Reconsidering the matter, we find nothing in the complaint to warrant counsel's assumption that there were two such classes of stockholders. On the other hand, it does not necessarily follow from the complaint that there were not. Considering the origin and nature of the trust as set forth in the contract, and the allegations of the complaint, it seems more than likely that the new stock was taken by the trustees for the use and benefit of the then stockholders. Such a state of facts would support our ruling.

For the purposes of this decision, we will now assume that the complaint does not justify the theory of our

original decision, and will proceed to consider appellants' proposition that it does not state a cause of action. as to any of the defendants not shown to hold shares of the original capital. In this category they place all who are not shown to have signed the contract.

It is alleged that, as the result of the carrying out of the contract, and of the increase of the capital stock, each of the five trustees became the record holder of 200 shares of the State Bank; that they held the same for the use and benefit, pro rata, of each and every one of the stockholders of the National Bank; that the ratio of holding of each stockholder is one share of State Bank stock to two shares of National Bank stock; that the holders of stock in the National Bank all hold certificates to evidence their beneficial ownership of State Bank stock; and that the defendants (including the appellants) are the beneficial and equitable owners of the number of shares set opposite their respective names.

If these allegations are true, the appellants are liable. But counsel object that, excluding conclusions of law, the facts alleged are insufficient. Assuming, arguendo, that the allegation that the trustees hold the shares for the use and benefit of the stockholders of the National Bank is such a conclusion, our inquiry is whether the specific facts alleged support it. We have the facts that the stock was issued to the trustees; that appellants each hold shares in the National Bank, indorsed to show a beneficial ownership in the stock of the State Bank. Counsel urge, not the fact, of course, but the possibility, that appellants may not have known of the indorsement of their certificates, or may have been misled by the reference to the contract, which did not contemplate any increase of capital stock. The natural inferences, however, are to the contrary.

Appellants are in the position of holding and owning certificates no doubt considered valuable when acquired, which contain notice of some beneficial interest in other shares. Naturally such notice would lead them to inquire into the nature and extent of such in-

terest. Whether they made such inquiry is a question of fact. It is within the knowledge of appellants, and presumably not within the knowledge of the appellee. In our judgment, the ownership and possession of these certificates, indorsed as stated, makes a prima facie case of the beneficial ownership of shares in the State Bank, just as it makes a prima facie case of legal ownership of shares in the National Bank. It might be rebutted, but by facts, not mere possibilities. By the demurrer, appellants admit facts constituting a prima facie case and calling for some facts in explanation. So we think the allegation of these facts supports the conclusion and puts appellants to an answer.

[7] We do not think that, in testing the sufficiency of this complaint, we should reject the conclusion of law. In Michelet v. Cole, 20 N. M. 357, 149 P. 310, this court said:

"An objection to a complaint, or a cross-complaint, that it does not state facts sufficient to constitute a cause of action is good only when there is a total failure to allege some matter which is essential to the relief sought, and is not good when the allegations are simply incomplete, indefinite, or statements of conclusions of law or fact."

Under this rule, we are convinced that the complaint states a cause of action, even as against such of the defendants as may hold shares issued under the amendment increasing the capital stock. See, also, Chaves v. Lucero, 13 N. M. 368, 85 P. 233, 6 L. R. A. (N. S.) 793.

The fifth ground of the motion raises the question whether the said National Bank was a necessary party. Under it counsel urge that we reconsider our holding that the National Bank was not a party to the contract creating the trust. Having carefully considered the argument in this behalf, we see no occasion to add to or change what we said in the original opinion.

[8] Finally, it is contended (sixth ground of motion) that the trustees are necessary parties to the suit. We do not think the point well taken. The object of this suit is not to adjust equities as between the trustees and their cestuis. It is not intended here to decide

Maddison v. Bryan et al., 31 N. M. 404

whether any stockholders' liability rests upon the trustees. If it does, that does not affect the right of the receiver to pursue his remedy against the real owner of the stock. Houghton v. Hubbell, 91 F. 453, 33 C. C. A. 574.

Concluding, therefore, that our disposition of this appeal was correct, the motion for rehearing is denied.

PARKER, C. J., and BICKLEY, J., concur.